## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re                                                    :    **Chapter 11**
                                                         :
**CTI FOODS, LLC,** *et al.,*                            :    **Case No. 19–10497 (CSS)**
                                                         :
                                                         :
Debtors.[1]                                              :    **(Joint Administration Requested)**
                                                         :
                                                         :    **Re: Docket No. 11**

------------------------------------------------------- x

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of CTI Foods Holding Co., LLC (the "**Company**"),

and its affiliated debtors, each as a debtor and debtor in possession (collectively, the "**Debtors**")

in the above-captioned cases (the "**Chapter 11 Cases**") pursuant to sections 105, 361, 362,

363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503 and 507 of title 11 of

the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), Rules 2002, 4001,

6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Chef Holdings, Inc. (8070); Chef Intermediate, Inc. (8653); CTIF Holdings, Inc. (0046); Chef Investment, LLC (3918); CTI Foods Acquisition LLC (3918); CTI Foods Holding Co., LLC (8320); CTI Services Corporation (2331); CTI Foods, LLC (3673); CTI Arlington, LLC (6103); CTI Saginaw I, LLC (6133); CTI King of Prussia, LLC (4771); CTI-SSI Food Services, LLC (8322); S & S Foods LLC (7447); Custom Food Products Holdings, LLC (2697); Custom Food Products, LLC (0697); Liguria Holdings, Inc. (8652); and Liguria Foods, Inc. (6446). The Debtors' mailing address is 504 Sansom Blvd., Saginaw, Texas 76179.

[2]   Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in the Motion.

Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**") seeking, among other things:

(i) authorization for (x) the Company and certain of its subsidiaries (collectively, the "**ABL DIP Borrowers**") to obtain postpetition financing as set forth in the ABL DIP Documents (as defined below) (the "**ABL DIP Financing**"), and for the ABL DIP Guarantors[3] (together with the ABL DIP Borrowers, the "**ABL DIP Loan Parties**") to guaranty the obligations (the "**ABL DIP Obligations**") of the ABL DIP Borrowers in connection with the ABL DIP Financing; and (y) the Company to obtain postpetition financing as set forth in the Term DIP Documents (as defined below) (the "**Term DIP Financing**" and, together with the ABL DIP Financing, the "**DIP Financing**."), and for the Term DIP Guarantors[4] (together with the Company, the "**Term DIP Loan Parties**"; the Term DIP Loan Parties and the ABL DIP Loan Parties are collectively referred to herein as the "**DIP Loan Parties**") to guaranty the obligations (the "**Term DIP Obligations**" and, together with the ABL DIP Obligations, the "**DIP Obligations**") of the Company in connection with the Term DIP Financing; the DIP Financing consisting of:

(I) a superpriority debtor-in-possession asset-based revolving credit facility made available to the ABL DIP Borrowers in an aggregate principal amount of up to $80,000,000 (the "**ABL DIP Facility**"), pursuant to the terms and conditions of that certain Senior Secured Superpriority Debtor-In-Possession Revolving Credit Agreement dated as of ____, 2019 (as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**ABL DIP Credit Agreement**"), among the ABL DIP Borrowers, the ABL DIP Guarantors and Barclays Bank PLC, as administrative agent, collateral agent and joint lead arranger (in such capacities, the "**ABL DIP Agent**") for and on behalf of itself and the lenders party thereto (including any fronting and issuing banks under any letter of credit facility provided by the ABL DIP Credit Agreement, Wells Fargo Bank, N.A., as joint lead arranger ("**ABL DIP Arranger**"), including their respective successors and assigns, the "**ABL DIP Lenders**," and, together with the ABL DIP Agent, the "**ABL DIP Secured Parties**"), substantially in the form attached to the Motion as **Exhibit B-1**; and

---

[3] The "**ABL DIP Guarantors**" shall mean, collectively, the "Guarantors" (as defined in the ABL DIP Credit Agreement").

[4] The "**Term DIP Guarantors**" shall mean, collectively, the "Guarantors" (as defined in the Term DIP Facility").

(II)    a superpriority debtor-in-possession term loan credit facility made available to the Company in an aggregate principal amount of up to $75,000,000 (the "**Term DIP Facility**" and, together with the ABL DIP Facility, the "**DIP Facilities**"), pursuant to the terms and conditions of that certain Senior Secured Superpriority Debtor-In-Possession Term Loan Agreement dated as of ____, 2019 (as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**Term DIP Credit Agreement**" and, together with the ABL DIP Credit Agreement, the "**DIP Credit Agreements**"), among the Company, the Term DIP Guarantors, and the administrative agent and collateral agent (the "**Term DIP Agent**" and, together with the ABL DIP Agent, the "**DIP Agents**") for and on behalf of itself and the lenders party thereto (the "**Term DIP Lenders**" and, together with the Term DIP Agent, the "**Term DIP Secured Parties**"; the Term DIP Secured Parties, together with the ABL DIP Secured Parties are collectively referred to herein as the "**DIP Secured Parties**"), substantially in the form attached to the Motion as **Exhibit B-2**;

(ii)    authorization for:

(I)    the ABL DIP Borrowers and the ABL DIP Guarantors to execute and enter into the ABL DIP Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other Loan Documents (as defined in the ABL DIP Credit Agreement) and documents related thereto, including, without limitation, the Fee Letters (as defined in the ABL DIP Credit Agreement), that certain DIP ABL Commitment Letter, attached as **Exhibit C** to the Restructuring Support Agreement,[5] and the DIP ICA (as defined below) (as each of the foregoing may be amended, restated, supplemented, waived, and/or modified from time to time in accordance with the terms hereof and thereof, and collectively with the ABL DIP Credit Agreement, the "**ABL DIP Documents**") and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the ABL DIP Documents;

(II)    the Company and the Term DIP Guarantors to execute and enter into the Term DIP Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements,

---

[5]    A copy of the Restructuring Support Agreement is annexed as **Exhibit A** to the Percy Declaration.

notes and other Loan Documents (as defined in the Term DIP Credit Agreement) and documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time in accordance with the terms hereof and thereof, and collectively with the Term DIP Credit Agreement, the "**Term DIP Documents**"; the Term DIP Documents together with the ABL DIP Documents, are collectively referred to herein as the "**DIP Documents**") and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the Term DIP Documents;

(iii)  (x) authorization for the DIP Loan Parties to immediately use proceeds of the ABL DIP Financing to, simultaneously with the initial draw under the ABL DIP Facility, (i) refinance the Prepetition ABL Debt (as defined below), including interest and fees through the date of repayment (at the non-default contract rate), which refinancing shall be indefeasible upon the occurrence of the ABL Discharge[6], (ii) deem all Existing Letters of Credit as Letters of Credit under this Agreement on and after the Closing Date with the same effect as if such Existing Letters of Credit were issued by Issuing Bank at the request of Borrower Agent on the Closing Date, or issue new letter(s) of credit under the ABL DIP Facility to replace any Existing Letters of Credit (as defined in the ABL DIP Credit Agreement) and any existing secured agreements for the benefit of the issuer(s) of the same, and (iii) continue to obtain banking services outstanding under the Prepetition ABL Credit Agreement (as defined below) and (y) approval of the form and substance of, and authorization for the ABL DIP Loan Parties to execute and perform under, the Payoff Letter, among the ABL DIP Loan Parties, the Prepetition ABL Agent (as defined below) and the issuing lenders party thereto substantially in the form attached to the Motion as **Exhibit D** (the "**Prepetition ABL Payoff Letter**");

(iv)  until the occurrence of the ABL Discharge, the granting of postpetition liens to the Prepetition ABL Agent and the Prepetition ABL Lenders (as defined below) in connection with the Prepetition ABL Credit Agreement;

---

[6]  "**ABL Discharge**" means the indefeasible refinancing of the Prepetition ABL Debt in full in cash, including interest and fees through the date of repayment (at the non-default contract rate), which shall be deemed to have occurred if no adversary proceeding or contested matter is timely and properly asserted in accordance with this Interim Order with respect to the Prepetition ABL Debt or against any Prepetition ABL Secured Party (as defined below), or if such an adversary proceeding or contested matter is timely and properly asserted in accordance with this Interim Order, upon the final disposition of such adversary proceeding or contested matter in favor of the applicable Prepetition ABL Secured Party or Parties by order of a court of competent jurisdiction; *provided* that, for the avoidance of doubt, interest shall cease to accrue on the Prepetition ABL Debt upon the repayment from the initial draw under the ABL DIP Facility as provided in this Interim Order unless the Prepetition ABL Debt is reinstated.

01:24256487.2

WEIL:\96951643\5\39681.0001

(v)    authorization for the DIP Loan Parties to grant adequate protection to the Prepetition Secured Parties (as defined below) under or in connection with the following agreements, as applicable:

(I)    that certain Revolving Credit Agreement, dated as of June 28, 2013 (as amended, supplemented, restated or otherwise modified prior to the Petition Date (as defined below), the "**Prepetition ABL Credit Agreement**" and, the facility thereunder, the "**Prepetition ABL Credit Facility**"), among the ABL DIP Borrowers, the guarantors party thereto (the "**Prepetition ABL Guarantors**"), Wells Fargo Bank, N.A., as successor administrative agent and collateral agent (the "**Prepetition ABL Agent**"), the lenders party thereto (the "**Prepetition ABL Lenders**" and, together with the Prepetition ABL Agent and any other "Secured Party" as defined in the Prepetition ABL Credit Agreement, the "**Prepetition ABL Secured Parties**"), and those certain Collateral Documents (as defined in the Prepetition ABL Credit Agreement and, collectively with the Prepetition ABL Credit Agreement, and all other documentation executed in connection therewith, the "**Prepetition ABL Documents**");

(II)    First Lien Term Loan Agreement, dated as of June 28, 2013 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition First Lien Term Loan Credit Agreement**" and, the facility thereunder, the "**Prepetition First Lien Term Loan Credit Facility**"), among the Company, as borrower, the guarantors party thereto (the "**Prepetition First Lien Term Loan Guarantors**"), Morgan Stanley Senior Funding, Inc., as administrative agent and collateral agent (the "**Prepetition First Lien Term Loan Agent**"), and the lenders party thereto (the "**Prepetition First Lien Term Loan Lenders**" and, together with the Prepetition First Lien Term Agent, the "**Prepetition First Lien Term Loan Secured Parties**"), and those certain Collateral Documents (as defined in the Prepetition First Lien Credit Agreement and, collectively with the Prepetition First Lien Credit Agreement, and all other documentation executed in connection therewith, the "**Prepetition First Lien Term Loan Documents**");

(III)    Second Lien Term Loan Agreement, dated as of June 28, 2013 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition Second Lien Term Loan Credit Agreement**"[7] and, the facility thereunder, the "**Prepetition**

---

[7]    The Prepetition ABL Credit Agreement, the Prepetition First Lien Term Loan Credit Agreement and the Prepetition Second Lien Term Loan Credit Agreement are collectively referred to as the "**Prepetition Credit Agreements**."

Second Lien Term Loan Credit Facility"[8]), among the Company, as borrower, the guarantors party thereto (the "**Prepetition Second Lien Term Loan Guarantors**"), Morgan Stanley Senior Funding, Inc., as administrative agent and collateral agent (the "**Prepetition Second Lien Term Loan Agent**" and together with the Prepetition First Lien Term Loan Agent and Prepetition ABL Agent, the "**Prepetition Agents**"), and the lenders party thereto (the "**Prepetition Second Lien Term Loan Lenders**[9]" and, together with the Prepetition Second Lien Term Loan Agent, the "**Prepetition Second Lien Term Loan Secured Parties**"[10]), and those certain Collateral Documents (as defined in the Prepetition Second Lien Credit Agreement and, collectively with the Prepetition Second Lien Credit Agreement, and all other documentation executed in connection therewith, the "**Prepetition Second Lien Term Loan Documents**"[11] and together with the Prepetition First Lien Term Loan Documents and Prepetition ABL Documents, the "**Prepetition Documents**"));

(vi)    subject to the restrictions set forth in the DIP Documents and this Interim Order (the "**Interim Order**"), authorization for the DIP Loan Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties has an interest, and to grant adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of Cash Collateral and other Prepetition Collateral;

(vii)    authorization for the DIP Loan Parties to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, but not limited to, letter of credit fees (including issuance and other related charges), unused line commitment fees, structuring fees, backstop fee, closing fees, exit fees, prepayment fee, audit fees, appraisal fees, valuation fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agents' and DIP Lenders' attorneys, advisors, accountants, appraisers, bankers,

---

[8]    The Prepetition ABL Credit Facility, the Prepetition First Lien Term Loan Credit Facility and the Prepetition Second Lien Term Loan Credit Facility are collectively referred to as the "**Prepetition Credit Facilities**."

[9]    The Prepetition First Lien Term Loan Lenders and the Prepetition Second Lien Term Loan Lenders are collectively referred to as the "**Prepetition Term Loan Lenders**", and, along with the Prepetition ABL Lenders, the "**Prepetition Lenders**."

[10]    The Prepetition First Lien Term Loan Secured Parties and the Prepetition Second Lien Term Loan Secured Parties are collectively referred to as the "**Prepetition Term Loan Secured Parties**", and, along with the Prepetition ABL Secured Parties, the "**Prepetition Secured Parties**."

[11]    The Prepetition ABL Documents, the Prepetition First Lien Term Loan Documents and the Prepetition Second Lien Term Loan Documents are collectively referred to as the "**Prepetition Secured Debt Documents**."

and other consultants, including payment of fees owed in the form of Capital Stock (as defined in the DIP Documents) in the reorganized Debtors (the "**New Equity**"), all to the extent provided in, and in accordance with, the DIP Documents;

(viii)   approval of certain stipulations by the Debtors with respect to the Prepetition Secured Debt Documents and the liens and security interests arising therefrom;

(ix)   subject to the Carve-Out (as defined below), the granting to the DIP Secured Parties of allowed superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the DIP Loan Parties;

(x)   the granting to the DIP Secured Parties of liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the DIP Loan Parties' estates and all proceeds thereof, including, subject only to and effective upon entry of the Final Order, any Avoidance Proceeds (as defined below), in each case subject to the Carve-Out and with the relative priorities set forth in this Interim Order, the DIP ICA (as defined below) and on **Exhibit A** hereto;

(xi)   subject to entry of the Final Order, a waiver of (a) the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral (as defined below) (together, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code, and (b) any right of the Debtors under the "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(xii)   subject to entry of the Final Order and authorization, upon the occurrence of the Conversion Date (as defined in the Term DIP Credit Agreement, the "**Conversion Date**"), for the Loan Parties to convert all of the Term DIP Facility into a post-emergence exit financing facility (the "**Exit Facility**");

(xiii)   modification of the automatic stay to the extent set forth herein and in the DIP Documents;

(xiv)   the scheduling of an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of the Interim Order; and;

(xv)   the scheduling of a final hearing (the "**Final Hearing**") to be held within 30 days of the entry of the Interim Order to consider final approval of the DIP Facilities and use of Cash Collateral pursuant to a proposed final order (the "**Final Order**"), as set forth in the Motion and the DIP Documents filed with this Court;

and due and appropriate notice of the Motion and the Interim Hearing having been served by the Debtors on the parties identified in the Motion, and it appearing that no other or further notice need be provided; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having reviewed the Motion; and pursuant to Bankruptcy Rule 4001, the Interim Hearing on the Motion having been held by this Court on March 12, 2019; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties in interest in these Chapter 11 Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, the *Declaration of Karn S. Chopra in Support of Motion of Debtors for Interim and Final Orders Approving Postpetition Financing Arrangement and Use of Cash Collateral*, the *Declaration of Kent Percy in Support of Debtors' Chapter 11 Petitions and First Day Relief*, and at the Interim Hearing, and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Disposition.* The relief requested in the Motion is GRANTED ON AN INTERIM BASIS in accordance with the terms of this Interim Order. Any and all objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, settled, or resolved and all reservations of rights included therein, are hereby denied and overruled on the merits. This Interim Order shall become effective immediately upon its entry.

2.    *Petition Date.* On March 11, 2019 (the "**Petition Date**"), each Debtor filed a voluntary petition (each, a "**Petition**") under chapter 11 of the Bankruptcy Code. The Debtors

continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

3.      *Jurisdiction.*  This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      *Committee Formation.*  As of the date hereof, no official committee of unsecured creditors under Section 1102 of the Bankruptcy Code (the "**Committee**") or any other statutory committee has been appointed in the Chapter 11 Cases.

5.      *Notice.*  Appropriate notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

6.      *Debtors' Stipulations.*  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 28 and 32 below, the Debtors admit, stipulate and agree that:

(a)      (i) as of the Petition Date: (A) the ABL DIP Borrowers and the Prepetition ABL Guarantors were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $93,500,000 in respect of loans made to the ABL DIP

WEIL:\96951643\5\39681.0001

Borrowers, $25,040,000 in respect of letters of credit issued to the ABL DIP Borrowers by the Prepetition ABL Lenders pursuant to, and in accordance with the terms of, the Prepetition ABL Documents, and Banking Services Obligations (as defined in the ABL DIP Credit Agreement), plus, in each case, accrued and unpaid interest thereon and fees, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition ABL Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition ABL Documents (collectively, the **"Prepetition ABL Debt"**), which Prepetition ABL Debt has been guaranteed on a joint and several basis by all of the Prepetition ABL Guarantors; (B) the Company and the Prepetition First Lien Term Loan Guarantors were justly and lawfully indebted and liable to the Prepetition First Lien Term Loan Secured Parties without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than approximately $347,000,000 in respect of loans made by the Prepetition First Lien Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition First Lien Term Loan Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition First Lien Term Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition First Lien Term Loan Documents (collectively, the **"Prepetition First Lien Term Loan Debt"**), which Prepetition First Lien Term Loan Debt has been guaranteed on a joint and several basis by all of the Prepetition First Lien Term Loan Guarantors and (C) the Company and the Prepetition Second Lien Term Loan Guarantors were justly and lawfully indebted and liable to the

Prepetition Second Lien Term Loan Secured Parties without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than approximately $140,000,000 in respect of loans made by the Prepetition Second Lien Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition Second Lien Term Loan Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition Second Lien Term Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition Second Lien Term Loan Documents (collectively, the "**Prepetition Second Lien Term Loan Debt**" and, together with the Prepetition ABL Debt and Prepetition First Lien Term Loan Debt, the "**Prepetition Debt**"), which Prepetition Second Lien Term Loan Debt has been guaranteed on a joint and several basis by all of the Prepetition Second Lien Term Loan Guarantors; (ii) the Prepetition Debt constitutes the legal, valid, binding, and non-avoidable obligations of the Company and the applicable Prepetition Borrowers [12] and the applicable Prepetition Guarantors,[13] enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Debt or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Secured Debt Documents prior to the Petition Date is subject to  any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause

---

[12]  "**Prepetition Borrowers**" shall mean, in the case of the Prepetition First Lien Term Loan Debt and the Prepetition Second Lien Term Loan Debt, the Company and, in the case of the Prepetition ABL Debt, the ABL DIP Borrowers.

[13]  "**Prepetition Guarantors**" shall mean, collectively, the Prepetition ABL Guarantors, the Prepetition First Lien Term Loan Guarantors and the Prepetition Second Lien Term Loan Guarantors.

of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b)       as of the date of the Petition Date, the liens and security interests granted to the Prepetition ABL Secured Parties (the "**Prepetition ABL Liens**") pursuant to and in connection with the Prepetition ABL Documents are: (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the Prepetition ABL Priority Collateral;[14] (ii) valid, binding, perfected, enforceable, third-priority liens and security interests in the Prepetition Term Loan Priority Collateral [15] (together with the Prepetition ABL Priority Collateral, the "**Prepetition Collateral**"); (iii) not subject to avoidance, recharacterization, subordination, recovery, attack, counterclaim, crossclaim, offset, recoupment, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date, subject and subordinate only to (A) in the case of the Prepetition Term Loan Priority Collateral, (1) the liens and security interests in favor of the Prepetition First Lien Term Loan Secured Parties and Prepetition Second Lien Term Loan Secured Parties and (2) certain other liens permitted by the Prepetition Secured Debt Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to Prepetition Term Liens (as defined below) and (B) in the case of the Prepetition ABL Priority Collateral, certain other liens permitted by the Prepetition Secured Debt Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition ABL Liens;

---

[14]   "**Prepetition ABL Priority Collateral**" means "Revolving Facility Priority Collateral" as defined in the Prepetition Intercreditor Agreement (as defined below).

[15]   "**Prepetition Term Loan Priority Collateral**" means "Term Loan Priority Collateral" as defined in the Prepetition Intercreditor Agreement.

(c)      as of the date of the Petition Date, the liens and security interests granted to the Prepetition First Lien Term Loan Secured Parties (the "**Prepetition First Lien Term Liens**") pursuant to and in connection with the Prepetition First Lien Term Loan Documents are: (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the Prepetition Term Loan Priority Collateral; (ii) valid, binding, perfected, enforceable, second-priority liens and security interests in the Prepetition ABL Priority Collateral; (iii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, crossclaim, offset, recoupment, defense or claim (as such term is used the Bankruptcy Code, "**Claim**") under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date, subject and subordinate only to (A) in the case of the Prepetition ABL Priority Collateral, (1) the liens and security interests in favor of the Prepetition ABL Secured Parties and (2) certain other liens permitted by the Prepetition Secured Debt Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition ABL Liens (B) in the case of the Prepetition Term Loan Priority Collateral, certain other liens permitted by the Prepetition Secured Debt Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to Prepetition Term Liens;

(d)      as of the Petition Date, the liens and security interests granted to the Prepetition Second Lien Term Loan Secured Parties (the "**Prepetition Second Lien Term Liens**" and, together with the Prepetition First Lien Term Liens, the "**Prepetition Term Liens**" and together with the Prepetition ABL Liens, the "**Prepetition Liens**") pursuant to and in connection with the Prepetition Second Lien Term Loan Agreements are: (i) valid, binding, perfected, enforceable, second-priority liens and security interests in the Prepetition Term Loan Priority

WEIL:\96951643\5\39681.0001

Collateral; (ii) valid, binding, perfected, enforceable, third-priority liens and security interests in the Prepetition ABL Priority Collateral; (iii) not subject to avoidance, recharacterization, subordination, recovery, attack, counterclaim, crossclaim, offset, recoupment, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date, subject and subordinate only to (A) in the case of the Prepetition ABL Priority Collateral, (1) the liens and security interests in favor of the Prepetition ABL Secured Parties and the Prepetition First Lien Term Loan Secured Parties and (2) certain other liens permitted by the Prepetition Secured Debt Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition ABL Liens (B) in the case of the Prepetition Term Loan Priority Collateral, (1) the Prepetition First Lien Term Liens and (2) certain other liens permitted by the Prepetition Secured Debt Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to Prepetition Term Liens;

(e)    the aggregate value of the Prepetition ABL Priority Collateral exceeds the aggregate amount of the Prepetition ABL Debt;

(f)    as of the Petition Date, other than as expressly permitted under the Prepetition Secured Debt Documents, there were no liens on or security interests in the Prepetition Collateral other than the Prepetition Liens;

(g)    none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Secured Debt Documents;

(h)     no claims, counterclaims, objections, defenses, set-off rights, challenges or causes of action exist against, or with respect to, the Prepetition Secured Parties or any of their respective affiliates, agents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, or other equitable relief that might otherwise impair the aforementioned parties or their interest in the Prepetition Collateral, subordination, avoidance or other claims, including any claims or causes of action arising under or pursuant to sections 105, 502(d), 510, 542 through 553(b) or 724(a) of the Bankruptcy Code), in connection with or arising under any Prepetition Documents or the transactions contemplated thereunder or the Prepetition Debt or Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery; and the Debtors and their estates hereby release and discharge any and all such claims, counterclaims, objections, defenses, set-off rights, challenges and causes of actions;

(i)     subject to entry of the Final Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured Parties and their respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition Secured Debt Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and

of the transactions reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, whether such Released Claims are matured, contingent, liquidated, unliquidated, unmatured, known, unknown or otherwise;

(j)      that certain Intercreditor Agreement, dated as of June 28, 2013 (as amended, supplemented, restated or otherwise modified and as in effect on the Petition Date, the "**Prepetition Intercreditor Agreement**") among CTI Foods Acquisition LLC, CTI Foods Holdings Co., LLC, and the other grantors party thereto and the Prepetition Agents, which governs, among other things, the relative priorities of the Prepetition Liens in respect of the applicable Prepetition Collateral, is binding and enforceable against the Prepetition Borrowers, the Prepetition Guarantors and the Prepetition Secured Parties in accordance with its terms, and the Prepetition Borrowers, the Prepetition Guarantors and the Prepetition Secured Parties are not entitled to take any action that would be contrary to the provisions thereof; and

(k)      all cash, securities or other property of the DIP Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the DIP Loan Parties in any account or accounts  (collectively, the "**Depository Institutions**") were subject to rights of set-off under the Prepetition Secured Debt Documents and applicable law, for the benefit of the Prepetition Secured Parties.   All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes

WEIL:\96951643\5\39681.0001

Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

(l)       On June 28, 2013, CTI Foods Holding Co., LLC filed an Amended and Restated Certificate of Formation (the "**Restated Certificate**") with the Secretary of State of the State of Delaware.  The Restated Certificate included a scrivener's error by incorrectly listing CTI's legal name as "CTI Foods Holdings Co., LLC".  No party has been adversely affected by the scrivener's error, and for all purposes, the Restated Certificate shall be deemed to properly reflect CTI's legal name as "CTI Foods Holding Co., LLC".

7.    *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(a)       Good and sufficient cause has been shown for the entry of this Interim Order and authorization for the DIP Loan Parties to obtain financing pursuant to the DIP Facilities.

(b)       The DIP Loan Parties have an immediate need to obtain the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral) in order to, among other things, (i) permit the orderly continuation of the operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (iii) make payroll, (iv) satisfy other working capital and operational needs and (v) Repay in Full (as defined below) the Prepetition ABL Debt.  The access by the DIP Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the DIP Loan Parties and to a successful reorganization of the DIP Loan Parties.  The terms of the proposed financing are fair and reasonable, reflect each DIP Loan Parties' exercise

of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The adequate protection provided in this Interim Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(c)      The DIP Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders[16] under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The DIP Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the DIP Loan Parties granting to the DIP Secured Parties, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and, subject to the Carve-Out, incurring the Adequate Protection Obligations (as defined below), in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d)      Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, (i) the terms of the DIP Financing, (ii) the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraphs 19 and 20 of this Interim Order (the "**Adequate Protection**") and (iii) the terms on which the DIP Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to this Interim Order and the DIP Documents, are in each case fair and reasonable, reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represents the best financing presently available.

---

[16]  "**DIP Lenders**" means, collectively, the ABL DIP Lenders and the Term DIP Lenders.

WEIL:\96951643\5\39681.0001

(e)     To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed under the Prepetition Intercreditor Agreement to have consented to the DIP Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the DIP Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.

(f)     The DIP Financing, the Adequate Protection and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Agents, and the DIP Lenders, and all of the DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: (i) all loans made to and guarantees issued by the DIP Loan Parties pursuant to the DIP Documents (the "**DIP Loans**") and any "**Obligations**" (as defined in the DIP Credit Agreements) shall be deemed to have been extended by the DIP Agents and the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agents and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the DIP Loan Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the DIP Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens (as defined below)), in accordance with the terms of this Interim Order, and the Prepetition

Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)    The Prepetition Secured Parties are entitled to the Adequate Protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed Adequate Protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the DIP Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral (including Cash Collateral); *provided* that nothing in this Interim Order or the DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Prepetition Intercreditor Agreement, to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h)    Payment of the Prepetition ABL Debt reflects the DIP Loan Parties' exercise of prudent business judgment.

(i)    The Debtors have prepared and delivered to DIP Agents and the DIP Lenders an initial budget (the "**Initial Budget**"), a copy of which is attached to the Motion as **Exhibit C**. The Initial Budget reflects the Debtors' anticipated cash receipts and anticipated

20

disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date (the Initial Budget and each subsequent Approved Budget (an "**Approved Budget**")). The Debtors believe that the Initial Budget is reasonable under the facts and circumstances. The DIP Agents and the DIP Lenders are relying, in part, upon the Debtors' agreement to comply with the Approved Budget, the other DIP Documents, and this Interim Order in determining to enter into the postpetition financing arrangements provided for in this Interim Order.

(j)    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules and good cause has been shown for the immediate entry of this Interim Order. For the reasons set forth in the Motion and declarations filed in connection therewith, absent granting the relief set forth in this Interim Order, the DIP Loan Parties' estates would face significant business disruption resulting in immediate and irreparable harm. Consummation of the DIP Financing and the use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the DIP Loan Parties, their estates and their creditors. The terms of this Interim Order and the DIP Facilities are fair and reasonable under the circumstances, reflect the DIP Loan Parties' exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

8.    *Authorization of the DIP Financing and the DIP Documents.*

(a)    The DIP Loan Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents. The ABL DIP Borrowers are hereby authorized to forthwith borrow money, obtain letters of credit, and obtain Banking Services (as defined in the ABL DIP Credit Agreement), pursuant to the ABL DIP Credit Agreement, and the

01:24256487.2

WEIL:\96951643\5\39681.0001

ABL DIP Guarantors are hereby authorized to guaranty ABL DIP Obligations, in each case up to an aggregate principal or face amount equal to $80 million under the ABL DIP Facility, together with applicable interest, protective advances, expenses, fees and other charges payable in connection with the ABL DIP Facility, subject in each case to any limitations on borrowing under the ABL DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to refinance the Prepetition ABL Debt as provided herein, to provide working capital for the DIP Loan Parties and to pay interest, fees and expenses in accordance with this Interim Order and the DIP Documents (including any indemnification obligations). The DIP Loan Parties are hereby authorized to forthwith borrow money pursuant to the Term DIP Credit Agreement, and the Term DIP Guarantors are hereby authorized to guaranty the DIP Loan Parties' Term DIP Obligations with respect to such borrowings, in each case up to an aggregate principal amount equal to $62.5 million on an interim basis together with applicable interest, protective advances, expenses, fees and other charges payable in connection with the Term DIP Facility and, subject to entry of the Final Order, $75 million together with applicable interest, protective advances, expenses, fees and other charges payable in connection with the Term DIP Facility, subject to any limitations on borrowing under the Term DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to satisfy outstanding amounts of the Prepetition ABL Debt as provided herein, to provide working capital for the DIP Loan Parties and to pay interest, fees and expenses in accordance with this Interim Order and the DIP Documents.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements,

01:24256487.2

WEIL:\96951643\5\39681.0001

mortgages, deeds of trust and financing statements), and to pay all fees that may be reasonably required or necessary for the DIP Loan Parties to implement the terms of, performance of their obligations under or effectuate the purposes of and transactions contemplated by this Interim Order or the DIP Financing, including, without limitation:

(i)     the execution and delivery of, and performance under, each of the DIP Documents;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the DIP Loan Parties, the DIP Agents, the DIP Arrangers, and the applicable Required Lenders (as defined in the relevant DIP Credit Agreement) may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder;

(iii)     the non-refundable payment to the DIP Agents and/or the DIP Lenders, as the case may be, of all fees, including, without limitation, any closing fee, backstop fee, unused line commitment fee, structuring fee, exit fee, prepayment fee or agency fee (including, without limitation, any fee payable in the form of New Equity) (which fees, in each case, shall be, and shall be deemed to have been, approved upon entry of this Interim Order, and which fees shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action

or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, including, without limitation, payment of any such fees owed in the form of New Equity, in each case referred to in the DIP Credit Agreements (and in any separate letter agreements between any or all DIP Loan Parties, on the one hand, and any of the DIP Agents and/or DIP Lenders, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the DIP Agents or DIP Lenders, including, without limitation, the reasonable and documented fees and expenses of (i) Shearman & Sterling LLP as primary counsel to the ABL DIP Agent, Richards, Layton & Finger, P.A. as single Delaware counsel to the ABL DIP Agent in the State of Delaware, FTI Consulting as financial advisor to the ABL DIP Agent, and Otterbourg, P.C., as counsel to the Prepetition ABL Agent and the ABL DIP Arranger, and (ii) Davis Polk & Wardwell LLP as primary counsel to the Term DIP Agent, Morris, Nichols, Arsht & Tunnell LLP as single Delaware counsel to the Term DIP Agent in the State of Delaware and Evercore Group L.L.C. as financial advisor to the Term DIP Agent, in each case of the foregoing (i) and (ii), as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party, but subject to the provisions of this Interim Order regarding the submission of fee statements and the related objection period; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens and DIP Superpriority Claims as permitted herein and therein.

(c)    Upon execution and delivery of the DIP Documents, each of the DIP Documents shall constitute valid, binding and non-avoidable obligations of the DIP Loan Parties, fully enforceable against each DIP Loan Party in accordance with the terms of the DIP Documents and this Interim Order. No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order to the DIP Agents (including their Representatives) and/or the DIP Lenders (including their Representatives) shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

(d)    No DIP Lender or DIP Agent shall have any obligation or responsibility to monitor any DIP Loan Party's use of the DIP Financing, and each DIP Lender or DIP Agent may rely upon each DIP Loan Party's representations that the amount of DIP Financing requested at any time and the use thereof, are in accordance with the requirements of this Interim Order, the DIP Documents, and Bankruptcy Rule 4001(c)(2).

(e)    Except to the extent expressly set forth in the ABL DIP Documents, all prepetition practices and procedures for the payment and collection of proceeds of the ABL Collateral, the turnover of cash, the delivery of property to the ABL DIP Agent and the ABL DIP Lenders, including any control agreements and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption.

9.    *DIP Intercreditor Agreement.* The DIP Loan Parties are hereby authorized to execute, enter into and perform under the Intercreditor Agreement among the DIP Loan Parties,

the ABL DIP Agent and the Term DIP Agent, substantially in the form attached to the DIP Credit Agreements (the "**DIP ICA**"). For the avoidance of doubt, the DIP ICA shall be deemed a DIP Document hereunder.

10. *Payment of the Prepetition ABL Debt.* The DIP Loan Parties are hereby authorized to (x) execute the Prepetition ABL Payoff Letter and perform the transactions and undertakings set forth therein, which are hereby approved in all respects, and (y) use proceeds of the DIP Financing, at the initial closing of the DIP Financing, to Pay in Full the Prepetition ABL Debt, and (z) use the proceeds of the DIP Financing to pay any fees, charges or expenses incurred by the Prepetition ABL Agent prior to the Petition Date, but which are posted after the payoff of the Prepetition ABL Debt at the initial closing. The foregoing transactions in respect of the Prepetition ABL Debt shall be indefeasible upon the ABL Discharge. The Prepetition ABL Liens shall be automatically released and terminated upon the ABL Discharge. Until then, subject to the terms and conditions contained in this Interim Order (including, without limitation, the DIP Liens (as defined below) granted hereunder and the Carve-Out (as defined below)), any and all prepetition or postpetition liens and security interests (including, without limitation, any adequate protection replacement liens at any time granted to the Prepetition ABL Secured Parties by this Court) that the Prepetition ABL Secured Parties have or may have in the Collateral shall (a) continue to secure the unpaid portion of any Prepetition ABL Debt (including, without limitation, any Prepetition ABL Debt subsequently reinstated after the repayment thereof) and (b) be junior and subordinate in all respects to the Carve-Out and otherwise have the priorities set forth on **Exhibit A** attached hereto (such liens and security interests of the Prepetition ABL Secured Parties are hereinafter referred to as the "**ABL Indemnification Liens,**" and any such unpaid or reinstated Prepetition ABL Debt described in clause (a) of this sentence is hereinafter

01:24256487.2

WEIL:\96951643\5\39681.0001

referred to as the "**Prepetition ABL Indemnification Obligations**").  Any surviving obligations as set forth in any DIP Document, Prepetition Documents, any payoff letter related to the Prepetition ABL Debt and/or any documents related to the foregoing, including, without limitation, any indemnification of the Prepetition ABL Secured Parties, shall continue and survive the ABL Discharge and the other transactions described in this paragraph and shall not be discharged pursuant to a chapter 11 plan or any discharge under section 1141 of the Bankruptcy Code.

11.    *Carve-Out*

For purposes hereof, the "**Carve-Out**" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000 (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim or final compensation order or any other order of the Bankruptcy Court, all unpaid fees, costs, and expenses (the "**Professional Fees**") incurred or accrued by persons or firms retained by the Loan Parties pursuant to section 327, 328 or 363 of the Bankruptcy Code (collectively, the "**Debtor Professionals**") and any official committee of unsecured creditors (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") appointed in the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code at any time before or on the day of delivery by the DIP Agent of a Carve-Out Trigger Notice (defined below), plus Professional Fees incurred after the Carve-Out Trigger Notice in an amount not to exceed $3,000,000 of the Debtor Professionals; provided, that under

no circumstances shall any success, completion, or similar fees be payable from the Carve-Out following delivery of a Carve-Out Trigger Notice (collectively, the "**Carve-Out Amount**"), in each case subject to the limits imposed by this Interim Order and the Final Order (if and when entered).  Notwithstanding the foregoing, (x) the Prepetition ABL Secured Parties' and the ABL DIP Lenders' aggregate share of the Carve-Out shall not exceed an amount equal to the ABL Carve-Out Reserve Amount (defined below) and (y) the ABL DIP Liens, Prepetition ABL Adequate Protection Liens, ABL Indemnification Liens, and the DIP Superpriority Claims in favor of ABL DIP Lenders shall be subject to only the ABL Carve-Out Reserve Amount.

For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by any of the DIP Agents to (i) counsel to the Debtors; (ii) counsel to the ABL DIP Agent; (iii) counsel to the DIP Term Agent; (iv) counsel to the Prepetition ABL Secured Parties; (v) counsel to the ABL DIP Arranger; (vi) counsel to the Prepetition First Lien Term Loan Agent; and (vii) the U.S. Trustee describing the event of default that has occurred and is continuing under the applicable DIP Documents.  Immediately upon delivery of a Carve-Out Trigger Notice, and prior to the payment to any Prepetition Secured Party on account of the Adequate Protection or otherwise, the Debtors shall be required to deposit, in a segregated account not subject to the control of the DIP Agents or the Prepetition Agents (the "**Carve-Out Account**"), an amount equal to the Carve-Out Amount.  The funds on deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from the Carve-Out, and the DIP Agents and the Prepetition Agents, each on behalf of itself and the relevant secured parties, (i) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve-Out Account and (ii) shall have a security interest upon any residual interest in the Carve-Out Account available following satisfaction in cash in full of all obligations benefitting from the Carve-Out,

WEIL:\96951643\5\39681.0001

and the priority of such lien on the residual should be consistent with the DIP ICA and this Interim Order.

The ABL DIP Agent shall be entitled to maintain, as part of the Reserves (as defined in the ABL DIP Credit Agreement), a reserve (the "**ABL Carve-Out Reserve Amount**") in an amount up to or equal to (i) the amount of Professional Fees budgeted for Professional Persons employed by the Debtors in the Initial Budget or any subsequent Approved Budget, as applicable; plus (ii) $3,000,000.

Notwithstanding the foregoing, (x) the Carve-Out (or any Cash Collateral or other Collateral) shall not include, apply to, or be available for any fees or expenses incurred by any party (including Professional Persons) in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the DIP Lenders, the DIP Agents, the Prepetition Lenders or each of the Prepetition Agents, each in such capacity, and their respective agents, attorneys, advisors or representatives (whether in such capacity or otherwise), including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Prepetition Credit Agreements, including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agents or the Prepetition Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agents' assertion, enforcement or realization upon any DIP Collateral or Prepetition Collateral in accordance with the DIP Documents (including the DIP ICA) and the Interim Order other than to seek a

WEIL:\96951643\5\39681.0001

determination that an Event of Default (as defined in the DIP Credit Agreements) has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are approved by an order of the Court, and (y) prior to the delivery of the Carve-Out Trigger Notice, the Carve-Out shall not be reduced by the payment or incurrence of Professional Fees allowed by the Court prior to the delivery of the Carve-Out Trigger Notice. Further, notwithstanding anything to the contrary in this Interim Order, the failure of the Carve-Out Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out. DIP Agents and DIP Lenders shall not be responsible for the payment of any fees and disbursements or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate any of the DIP Agents or DIP Lenders, in any way, to pay compensation to, or to reimburse the expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

12. *DIP Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses

30

or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the DIP Loan Parties and all proceeds thereof in accordance with the DIP Credit Agreements and this Interim Order, subject only to the liens on such property and the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The DIP Superpriority Claims in respect of the ABL DIP Obligations and the Term DIP Obligations shall be *pari passu* in right of payment with one another and senior to the Adequate Protection Claims.

13.    *DIP Liens.*

(a)    *ABL DIP Liens.*  As security for the ABL DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation or filing by the ABL DIP Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good or the possession or control by the ABL DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the ABL DIP Agent for its own benefit and the benefit of the ABL DIP Secured Parties (all property identified in clauses (i)-(iii) below being collectively referred to as the "**ABL DIP Collateral**"), subject only to the payment of the Carve-Out and in each case in accordance with the priorities set forth in **<u>Exhibit A</u>** hereto (all such liens and security interests granted to the ABL DIP Agent,

for its benefit and for the benefit of the ABL DIP Lenders, pursuant to this Interim Order and the ABL DIP Documents, the "**ABL DIP Liens**"):

        (i)    <u>Liens on Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected (A) first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the ABL DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, of the same nature, scope and type as the Prepetition ABL Priority Collateral, and the proceeds, products, rents and profits thereof and (B) junior security interest in and lien upon all tangible and intangible pre- and postpetition property of the ABL DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, of the same nature, scope and type as the Prepetition Term Loan Priority Collateral, and the proceeds, products, rents and profits thereof, in each case that, on or as of the Petition Date are not subject to either (x) a valid, perfected and non-avoidable lien, or (y) valid and non-avoidable liens in existence as of the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and in each case other than the Avoidance Actions[17] (but including Avoidance Proceeds[18] subject to entry of the Final Order), but in each case subject to the Carve-Out;

        (ii)    <u>Liens Priming Certain Prepetition Secured Parties' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all pre- and postpetition property of the DIP Loan Parties of the same nature, scope and type as the Prepetition ABL Priority

---

[17] "**Avoidance Actions**" means, collectively, claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code.

[18] "**Avoidance Proceeds**" means any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise.

Collateral, regardless of where located, regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the Prepetition ABL Liens and the Prepetition Term Liens (the "**ABL DIP Priming Liens**"). Notwithstanding anything herein to the contrary, the ABL DIP Priming Liens shall be (A) subject and junior to the Carve-Out in all respects, (B) junior to (1) valid, perfected and non-avoidable liens, if any, to which the Prepetition ABL Liens are subject to (other than, for the avoidance of doubt, the Prepetition Term Liens) and (2) valid and non-avoidable liens to which the Prepetition ABL Liens are subject to and that are perfected after the Petition Date to the extent provided by section 546(b) of the Bankruptcy Code, in each case unless such liens are themselves Prepetition ABL Liens, (C) senior in all respects to the Prepetition ABL Liens and the Prepetition Term Liens, (D) senior to any Prepetition ABL Adequate Protection Liens and (E) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code. The Prepetition ABL Liens and the Prepetition Term Liens shall be primed by and made subject and subordinate to the Carve-Out and the ABL DIP Priming Liens; and

(iii)    <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, and subject to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all pre- and postpetition property of the Term DIP Loan Parties of the same nature, scope and type as the Prepetition Term Loan Priority Collateral or that, on or as of the Petition Date, is subject to valid, perfected and non-avoidable senior liens or valid and non-avoidable senior permitted liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case other than the Prepetition ABL Liens.

01:24256487.2

WEIL:\96951643\5\39681.0001

(b)     *Term DIP Liens.*  As security for the Term DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation or filing by the Term DIP Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the Term DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the Term DIP Agent for its own benefit and the benefit of the Term DIP Lenders (all property identified in clauses (i)-(iii) below being collectively referred to as the "**Term DIP Collateral**" and, collectively with ABL DIP Collateral, the "**DIP Collateral**"), subject only to the payment of the Carve-Out and in each case in accordance with the priorities set forth in **Exhibit A** hereto (all such liens and security interests granted to the Term DIP Agent, for its benefit and for the benefit of the Term DIP Lenders, pursuant to this Interim Order and the Term DIP Documents, the "**Term DIP Liens**" and together with the ABL DIP Liens, the "**DIP Liens**"):

(i)     Liens on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected (A) first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Term DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, of the same nature, scope and type as the Prepetition Term Loan Priority Collateral, and the proceeds, products, rents and profits thereof, and (B) junior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Term DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, of the same nature, scope and type as the Prepetition ABL Priority Collateral, and the proceeds, products, rents and profits thereof, in each case that, on or as of the Petition Date are not subject to either (x) a valid, perfected and non-avoidable lien,

or (y) valid and non-avoidable liens in existence as of the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, and in each case other than the Avoidance Actions (but including Avoidance Proceeds subject to entry of the Final Order), but in each case subject to the Carve-Out;

(ii)    <u>Liens Priming Certain Prepetition Secured Parties' Liens</u>.    Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all pre- and postpetition property of the DIP Loan Parties of the same nature, scope and type as the Prepetition Term Loan Priority Collateral, regardless of where located, regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the Prepetition ABL Liens and the Prepetition Term Liens (the "**Term DIP Priming Liens**"). Notwithstanding anything herein to the contrary, but subject to the relative priorities set forth in Section 13(c) herein, the Term DIP Priming Liens shall be (A) subject and junior to the Carve-Out in all respects, (B) junior to (1) valid, perfected and non-avoidable liens, if any, to which the Prepetition Term Liens are subject to (other than, for the avoidance of doubt, the Prepetition ABL Liens) and (2) valid and non-avoidable liens to which the Prepetition Term Liens are subject to and that are perfected after the Petition Date to the extent provided by Section 546(b) of the Bankruptcy Code, in each case unless such liens are themselves Prepetition Term Liens, (C) senior in all respects to the Prepetition Term Liens and Prepetition ABL Liens, (D) senior to any Prepetition Term Loan Adequate Protection Liens and (E) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.    The Prepetition Term Liens and

35

Prepetition ABL Liens shall be primed by and made subject and subordinate to the Carve-Out and the Term DIP Priming Liens;

(iii)   <u>Liens Junior to Certain Other Liens</u>.   Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all pre- and postpetition property of the ABL DIP Loan Parties of the same nature, scope and type as the Prepetition ABL Priority Collateral or that, on or as of the Petition Date, is subject to valid, perfected and non-avoidable senior liens or valid and non-avoidable senior permitted liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case other than the Prepetition Term Liens;

(c)   *Relative Priority of Liens*. Notwithstanding anything to the contrary in this Interim Order or in the DIP Documents, the relative priority of each DIP Lien granted in this paragraph 13 shall be as set forth in **Exhibit A** attached hereto and in the DIP ICA and the relative priority of the Prepetition Term Liens, the ABL Indemnification Liens, the Prepetition ABL Adequate Protection Liens, and the Prepetition Term Loan Adequate Protection Liens shall be as set forth in **Exhibit A** attached hereto; *provided* that, for the avoidance of doubt, each such lien shall be subject and subordinate to the Carve-Out in all respects.

(d)   *Automatic Effectiveness of Liens*. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the DIP Loan Parties to grant the liens and security interests to the DIP Agents, the other DIP Secured Parties and the Prepetition Secured Parties, in any such case, contemplated by this Interim Order and the other DIP Documents.

01:24256487.2

WEIL:\96951643\5\39681.0001

(e)     *Maintenance of Letters of Credit.* To the extent permitted by the DIP Documents, the DIP Loan Parties are authorized to maintain, amend, extend and renew letters of credit issued or deemed issued under the ABL DIP Facility on an uninterrupted basis and to take all actions reasonably appropriate with respect thereto on an uninterrupted basis, including, without limitation, to cash collateralize from time to time any such letters of credit pursuant to the ABL DIP Credit Agreement.

14.     *Protection of DIP Lenders' Rights.*

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined, and used, in the DIP Credit Agreement) (the "**DIP Commitments**") under the DIP Credit Agreements, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Secured Debt Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral, including in connection with the ABL Indemnification Liens, the Prepetition Liens or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iii), the DIP Agents or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to

continue the perfection of valid and non-avoidable liens or security interests as of the Petition Date and (iv) at the request of either DIP Agent, deliver or cause to be delivered, at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agents or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such DIP Collateral subject to any sale or disposition permitted by the DIP Documents and this Interim Order or in connection with the ABL Discharge.

(b)     To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agents and the DIP Lenders, and it shall comply with the instructions of the DIP Agents with respect to the exercise of such control.

(c)     Any proceeds of Prepetition Collateral received by any Prepetition Secured Party in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by any Prepetition Secured Party shall be segregated and held in trust for the benefit of and forthwith paid over to the applicable DIP Agents for the benefit of the applicable DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The DIP Agents are hereby authorized to make any such endorsements as agent for any such Prepetition Secured Party.  This authorization is coupled with an interest and is irrevocable.

(d)    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Secured Parties in respect of any DIP Facility to enforce all of their rights under the applicable DIP Documents and take any or all of the following actions, at the same or different time, in each case without further order or application of the Court: (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains, (B) all DIP Obligations to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP Loan Parties; notwithstanding anything herein or in any DIP Document to the contrary, (ii) the termination of the applicable DIP Documents as to any future liability or obligation of the applicable DIP Agent and the applicable DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations), including, without limitation, with respect to the ABL DIP Facility, the termination of any obligation of any issuing bank thereunder to issue, extend or renew letters of credit, or the termination of any obligation to provide Banking Services, (iii) with respect to the ABL DIP Facility, demand cash collateral in accordance with the ABL DIP Credit Agreement, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP Loan Parties, notwithstanding anything herein or in any DIP Document to the contrary, (iv) whether or not the maturity of any of the DIP Obligations shall have been accelerated, proceed to protect, enforce and exercise all rights and remedies of the DIP Secured Parties under the DIP Documents for such DIP Facility or applicable law, including, but not limited to, by suit in equity, action at law or other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in any such DIP Document or any instrument pursuant to which such DIP

01:24256487.2

WEIL:\96951643\5\39681.0001

Obligations are evidenced, and, if such amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or any other legal or equitable right of any of such DIP Secured Parties, and (v) unless this Court orders otherwise during the Remedies Notice Period (as defined below) after a hearing, upon the occurrence of an Event of Default and the giving of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "**Remedies Notice Period**") via email to counsel to the Debtors and the office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") to (A) withdraw consent to the DIP Loan Parties' continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law with respect to the DIP Collateral; *provided*, that no such notice shall be required for any exercise of rights or remedies (A) to block or limit withdrawals from any bank accounts that are a part of the Collateral (including, without limitation, by sending any control activation notices to depositary banks pursuant to any control agreement) or (B) in the event of DIP Obligations that have not been Paid in Full (other than contingent indemnification obligations as to which no claim has been asserted) on the applicable termination of the respective DIP Document.

(e)    During the Remedies Notice Period, the DIP Loan Parties shall be permitted to use Cash Collateral solely to (A) pay payroll and other critical administrative expenses to keep the business of the DIP Loan Parties operating, strictly in accordance with the Approved Budget and (B) fund the Carve-Out. During the Remedies Notice Period, the Debtors, the Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing with the Court within the Remedies Notice Period for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing. Except as set forth in this Interim

40

Order, the Debtors shall waive their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Secured Parties set forth in this Interim Order or the DIP Documents.

(f)    In no event shall the DIP Agents, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  Further, subject to entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(g)    No rights, protections or remedies of the DIP Agents or the DIP Lenders granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the DIP Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the DIP Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the DIP Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

15.    *Proceeds of Subsequent Financing.*    Without limiting the provisions and protections of Paragraph 12 above, but subject in all respects to the Carve-Out, if at any time prior to the Repayment in Full in accordance with the DIP Documents of all the DIP Obligations (including subsequent to the confirmation of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of this Interim

41

Order or the DIP Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agents for application to the DIP Obligations until such DIP Obligations are Paid in Full.

16. *Limitation on Charging Expenses Against Collateral.* Subject to entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of each of the DIP Agents, the Prepetition Agents (in the case of the Prepetition ABL Agent, prior to the ABL Discharge) and the Prepetition Lenders, as the case may be, that holds a lien on the relevant asset, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agents, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

17. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agents by, through or on behalf of the DIP Lenders pursuant to the provisions of the Interim Order, Final Order, the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code (subject to entry of the Final Order approving the

01:24256487.2

WEIL:\96951643\5\39681.0001

waiver of the Debtors' rights under sections 506(c) and 552(b) of the Bankruptcy Code), whether asserted or assessed by through or on behalf of the Debtors.

18.     *Use of Cash Collateral.*  The DIP Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order, to use Cash Collateral; *provided* that (a) the Prepetition Secured Parties are granted the Adequate Protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the DIP Loan Parties shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

19.     *ABL Indemnification Liens and Adequate Protection of Prepetition ABL Secured Parties.*  Until the occurrence of the ABL Discharge, the Prepetition ABL Secured Parties are entitled to (a) the ABL Indemnification Liens and (b) pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, adequate protection of their interests in all Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition ABL Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition ABL Liens by the DIP Liens pursuant to the DIP Documents and this Interim Order and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition ABL Adequate Protection Claim**").  In consideration of the foregoing, the Prepetition ABL Secured Parties are hereby granted the following, in each case, subject to the Carve-Out (collectively, the "**Prepetition ABL Secured Parties Adequate Protection Obligations**"):

(a)    ABL Indemnification Liens and Prepetition ABL Adequate Protection Liens. The Prepetition ABL Agent (for itself and for the benefit of the Prepetition ABL Lenders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), (i) to secure payment of  any and all Prepetition ABL Indemnification Claims, the ABL Indemnification Liens, and (ii) to secure payment of any and all of  the Prepetition ABL Adequate Protection Claims, a valid, perfected replacement security interest in and lien (the **"Prepetition ABL Adequate Protection Liens"**) (subject to the limitations set forth above) upon the Collateral in accordance with the priorities shown in **Exhibit A** and in each case subject to the Carve-Out.

(b)    Prepetition ABL Section 507(b) Claim.  The Prepetition ABL Secured Parties are hereby granted against each of the DIP Loan Parties on a joint and several basis an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition ABL Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the **"Prepetition ABL 507(b) Claim"**), which Prepetition ABL 507(b) Claim shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding Avoidance Actions but including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds).  The Prepetition ABL 507(b) Claim shall be subject and subordinate only to the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and shall be *pari passu* with the Prepetition Term Loan 507(b) Claim (as defined below) and senior in all respects to the Prepetition Second Lien Term Loan

WEIL:\96951643\5\39681.0001

507(b) Claim (as defined below). Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreements, the Prepetition ABL Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition ABL 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been Paid in Full and all DIP Commitments have been terminated. For purposes of this Interim Order, the terms "Paid in Full," "Repaid in Full," "Repay in Full," and "Payment in Full" shall mean, with respect to any referenced DIP Obligations and/or Prepetition Debt, (i) the indefeasible payment in full in cash of such obligations, (ii) the termination or cash collateralization, in accordance with the DIP Documents and/or Prepetition Secured Debt Documents, as applicable, of all undrawn letters of credit and Banking Services Obligations outstanding thereunder, and (iii) the termination of all commitments under the DIP Documents and/or the Prepetition Debt Documents, as applicable;

(c)    Prepetition ABL Agent Fees and Expenses. The Prepetition ABL Agent shall receive from the DIP Loan Parties, for the benefit of the Prepetition ABL Lenders, current cash payments of the reasonable and documented prepetition and postpetition fees and expenses incurred prior to the effectiveness of the indefeasible ABL Discharge with respect to Prepetition ABL Debt under the Prepetition ABL Documents and the Prepetition ABL Payoff Letter, including, but not limited to, the reasonable and documented fees and disbursements of counsel for the Prepetition ABL Agent (including lead counsel and one local counsel) promptly upon receipt of invoices therefor. The DIP Loan Parties are authorized to pay the prepetition reasonable and documented fees and expenses described in this subsection (c) immediately upon entry of this Interim Order. Postpetition, the Prepetition ABL Agent shall provide summary

WEIL:\96951643\5\39681.0001

form fee and expense statements (i.e., without any detail) to the DIP Loan Parties, the U.S. Trustee, and any Committee, which may be redacted for privileged information. If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) business days after delivery of such invoice to the Debtors, the U.S. Trustee, and any Committee, the DIP Loan Parties shall promptly pay such invoices. If an objection to a professional's invoice is timely received, the DIP Loan Parties shall promptly pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. The Prepetition ABL Agent (and each of its professionals) shall not be required to file applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges. Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination or disgorgement; and

(d)      Reserved.

(e)      Information Rights.   Until the occurrence of the ABL Discharge, the Debtors shall promptly provide the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, with all required written financial reporting and other periodic reporting that is delivered by any of the DIP Loan Parties under the DIP Documents. In addition, the Debtors shall provide the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, with reasonable access to the Debtors' officers, management, books and records, premises and properties.

20.      *Adequate Protection of Prepetition Term Loan Secured Parties.* The Prepetition Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, for

and equal in amount to the aggregate diminution in the value of the Prepetition Term Loan Secured Parties' interests in the Prepetition Collateral from and after the Petition Date, if any, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Term Liens by the DIP Liens pursuant to the DIP Documents and this Interim Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, (the "**Prepetition Term Loan Parties Adequate Protection Claim**" and, together with the Prepetition ABL Adequate Protection Claim, the "**Adequate Protection Claims**"); *provided*, that the avoidance of any Prepetition Term Loan Secured Parties' interests in Prepetition Collateral shall not constitute diminution in the value of such Prepetition Term Loan Secured Party's interests in Prepetition Collateral.  As adequate protection of the Prepetition Term Loan Parties Adequate Protection Claim, the Prepetition Term Loan Secured Parties are hereby granted the following, in each case subject to the Carve-Out (collectively, the "**Prepetition Term Loan Adequate Protection Obligations**" and, together with the Prepetition ABL Secured Parties Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a)     Prepetition Term Loan Adequate Protection Liens.  The Prepetition Term Loans Secured Parties are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Term Loan Parties Adequate Protection Claim, a replacement security interest in and lien (the "**Prepetition Term Loan Adequate Protection Liens**" and, together with the Prepetition ABL Adequate Protection Liens, the "**Adequate Protection Liens**") (subject to the limitations set

01:24256487.2

WEIL:\96951643\5\39681.0001

forth above) upon the Collateral in accordance with the priorities shown in **Exhibit A** and in each case subject to the Carve-Out;

(b)    Prepetition Term Loan Secured Parties Section 507(b) Claim.    The Prepetition First Lien Term Loan Secured Parties are hereby granted, subject to the Carve-Out, allowed superpriority claim as provided for in section 507(b) of the Bankruptcy Code, junior to the DIP Superpriority Claims (the "**Prepetition First Lien Term Loan 507(b) Claim**"). The Prepetition Second Lien Term Loan Secured Parties are hereby granted, subject to the Carve-Out, allowed superpriority claim as provided for in section 507(b) of the Bankruptcy Code, junior to the DIP Superpriority Claims and the Prepetition First Lien Term Loan 507(b) Claim (the "**Prepetition Second Lien Term Loan 507(b) Claim**" and, together with the Prepetition First Lien Term Loan 507(b) Claim and the Prepetition ABL 507(b) Claim, the "**507(b) Claims**"). The Prepetition Term Loan 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding Avoidance Actions but including, upon entry of the Final Order, the Avoidance Proceeds); *provided* that if the Prepetition First Lien Secured Parties waive the requirement that their Prepetition Term Loan 507(b) Claims be paid in full in cash, then the Prepetition Second Lien Secured Parties will also be deemed to waive such requirement. The Prepetition First Lien Term Loan 507(b) Claim shall be subject and subordinate to only the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and shall be *pari passu* with the Prepetition ABL 507(b) Claim. The Prepetition Second Lien Term Loan 507(b) Claim shall be subject and subordinate to only the Carve-Out, the Prepetition First Lien Term Loan 507(b) Claim, the Prepetition ABL 507(b) Claim and the DIP Superpriority Claims granted in respect of the DIP Obligations. Except to the extent expressly set forth in this Interim Order or the DIP

Credit Agreements, the Prepetition Term Loan Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition Term Loan 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash and the DIP Commitments have been terminated;

(c)    <u>Prepetition Term Loan Secured Parties' Fees and Expenses.</u>    The Prepetition Term Loan Agents[19] shall receive from the DIP Loan Parties, for the benefit of the Prepetition Term Loan Lenders, current cash payments of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Term Loan Agents under the Prepetition Term Loan Documents, including, but not limited to, the reasonable and documented fees and disbursements of one counsel and one local counsel for the Prepetition Term Loan Agents. The DIP Loan Parties shall also pay all reasonable and documented prepetition and postpetition fees and expenses of the Ad Hoc Group of Prepetition Term Loan Lenders, to the extent not already paid, including the reasonable and documented fees and expenses of Davis Polk & Wardwell, LLP, as counsel, Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel and Evercore Group L.L.C as financial advisor. The DIP Loan Parties are authorized to pay the reasonable and documented prepetition fees and expenses described in this subsection (c) immediately upon entry of this Interim Order. Postpetition, the Prepetition Term Loan Agents and the Ad Hoc Group of Prepetition Term Loan Lenders shall provide summary form fee and expense statements (i.e., without any detail) to the DIP Loan Parties, the U.S. Trustee, and any Committee, which may be redacted for privileged information. If no written objection is

---

[19] For the avoidance of doubt, the term "**Prepetition Term Loan Agents**" shall include their successors, Cortland Capital Market Services LLC and Wilmington Trust, National Association.

received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) business days after

delivery of such invoice to the Debtors, the U.S. Trustee, and any Committee, the DIP Loan

Parties shall promptly pay such invoices.  If an objection to a professional's invoice is timely

received, the DIP Loan Parties shall promptly pay the undisputed amount of the invoice and this

Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are

unable to resolve the dispute consensually.  The Prepetition Term Loan Agents and the Ad Hoc

Group of Prepetition Term Loan Lenders (and each of their professionals) shall not be required

to file applications or motions with, or obtain approval of, the Court for the payment of any of

their out-of-pocket costs, fees, expenses, disbursements and other charges.  Payments of any

amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination

or disgorgement.

(d)    <u>Reserved</u>.

(e)    <u>Information Rights.</u>  The Debtors shall promptly provide the Prepetition

Term Loan Agents, on behalf of itself and the Prepetition Term Loan Lenders, with all required

written financial reporting and other periodic reporting that is delivered by any of the DIP Loan

Parties under the DIP Documents.  In addition, the Debtors shall provide the Prepetition Term

Loan Agents, on behalf of itself and the Prepetition Term Loan Lenders, with reasonable access

to the Debtors' officers, management, books and records, premises and properties.

21.    *Adequate Protection Liens and Prepetition Intercreditor Agreement.*

Notwithstanding anything to the contrary herein, the Adequate Protection Liens shall retain the

same priority between and among the Prepetition Secured Parties as the liens such parties held

prior to the Petition Date pursuant as governed by the Prepetition Intercreditor Agreement, and

the Prepetition Intercreditor Agreement shall continue in full force and effect and nothing herein

shall be construed as modifying, amending, waiving or in any way impacting the effectiveness and enforceability thereof. The Prepetition ABL Lenders consent to the priming of their Prepetition ABL Liens by ABL DIP Liens, the Prepetition First Lien Term Loan Lenders consent to the priming of their Prepetition First Lien Term Liens by the DIP Liens (including the ABL DIP Liens) and the Prepetition Second Lien Term Loan Lenders are deemed to consent to the priming of their Prepetition Second Lien Term Liens by the DIP Liens (including the ABL DIP Liens) pursuant to the terms of the Prepetition Intercreditor Agreement.

22.    *Reservation of Rights of Prepetition Secured Parties.*  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including, subject to the entry of the Final Order, section 506(c) of the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that, subject to the terms of the Prepetition Intercreditor Agreement, any of the Prepetition Secured Parties may request further or different adequate protection.

23.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agents, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities or other property, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agents (on behalf of the DIP Lenders) or the Prepetition Secured Parties shall, in their sole discretion, choose to file such

WEIL:\96951643\5\39681.0001

financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities or other property, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Interim Order), at the time and on the date of entry of this Interim Order or thereafter. Upon the request of a DIP Agent, each of the Prepetition Secured Parties and the DIP Loan Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the applicable DIP Agent to further validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)      A certified copy of this Interim Order may, in the discretion of the DIP Agents, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agents to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)      To the extent that any Prepetition Secured Party is the secured party under any account control agreements, listed as loss payee or additional insured under any of the DIP Loan Parties' insurance policies or is the secured party under any other agreement, each of (i) the ABL DIP Agent, on behalf of the ABL DIP Secured Parties, and (ii) the Term DIP Agent, on behalf of the Term DIP Secured Parties, are also deemed to be the secured party under such

account control agreements, loss payee or additional insured under the Loan Parties' insurance policies and the secured party under each such agreement (in any such case with the same priority of liens and claims thereunder relative to the priority of (x) the Prepetition Liens and Adequate Protection Liens and (y) the DIP Liens, as set forth herein), and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement, but subject in all respects to the terms of this Interim Order), and shall, subject to the terms of this Interim Order, act in that capacity and distribute any proceeds recovered or received in respect of any of the foregoing, <u>first</u>, to the Payment in Full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted and consistent with the DIP ICA), and <u>second</u>, to the payment of the Prepetition Debt (consistent with the Prepetition Intercreditor Agreement). In accordance with the terms of this Interim Order and the other DIP Documents. The Prepetition First Lien Term Loan Agent, the Prepetition Second Lien Term Loan Agent, or the Prepetition ABL Agent, as applicable, shall serve as agent for the applicable DIP Agent for purposes of perfecting such DIP Agent's security interests in and liens on all Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

24. *Preservation of Rights Granted Under This Interim Order.*

(a) The relative priority of the claims and liens expressly granted by this Interim Order shall be as set forth in **Exhibit A**.

(b) Other than the Carve-Out and other claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agents and the DIP Lenders or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations

01:24256487.2

WEIL:\96951643\5\39681.0001

remain outstanding, and, except as otherwise expressly provided in paragraphs 11, 16 or 17 of this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the DIP Loan Parties.

(c)     It shall constitute an Event of Default and terminate the right of the DIP Loan Parties to use Cash Collateral if any of the DIP Loan Parties, without the prior written consent of the applicable Required Lenders seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any DIP Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

(i)     a failure of the Debtors to make any payment under this Interim Order to any of the Prepetition Secured Parties when due;

(ii)    a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Interim Order or (y) comply with any covenant or agreement in this Interim Order in any material respect;

(iii)   a failure of the Debtors to observe or perform any of the material terms or provisions contained in the RSA (as defined in the Term DIP Credit Agreement), unless the Debtors reasonably determine in good faith based upon the advice of counsel that continued

WEIL:\96951643\5\39681.0001

performance under the RSA would be inconsistent with the exercise of their fiduciary duties under applicable law;

(iv)   any modifications, amendments, or reversal of this Interim Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party;

(v)    any other order granting adequate protection or authorizing the use of Cash Collateral or other Collateral without the prior written consent of the DIP Agents, and no such consent shall be implied by any other action, inaction or acquiescence by any party;

(vi)   an order converting or dismissing any of the Chapter 11 Cases;

(vii)  an order appointing a chapter 11 trustee in the Chapter 11 Cases;

(viii) an order appointing an examiner with enlarged powers in the Chapter 11 Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);

(ix)   a plan of reorganization other than an Acceptable Plan of Reorganization, as defined in the DIP Credit Agreements, being proposed by the Debtors or confirmation thereof,

(x)    the sale of all or substantially all of the assets of the DIP Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the Repayment in Full of all DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made);

(xi)   authorizing debtor in possession financing pursuant to Section 364(c) or (d) of the Bankruptcy Code that does not provide for the Payment in Full of all DIP Obligations upon the consummation thereof

or

(xii)  any "Event of Default" as defined in the DIP Credit Agreements.

Except as otherwise provided in this Interim Order, any material violation of any of the terms of this Interim Order or any occurrence of an "Event of Default" under and as defined in this Interim Order or the DIP Credit Agreements shall constitute an event of default (each an "**Event of Default**") and upon any such Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Credit Agreements.  Notwithstanding

01:24256487.2

WEIL:\96951643\5\39681.0001

any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (A) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection shall have been Paid in Full (and that such DIP Superpriority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (B) the other rights granted by this Interim Order shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(d)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection incurred prior to the actual receipt of written notice by the DIP Agents or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens, the Adequate Protection Liens, the ABL Indemnification Liens, the Prepetition ABL Indemnification Obligations, the Prepetition Liens or the Prepetition Debt. Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral or Collateral, any DIP Obligations, DIP Liens, Adequate Protection or Adequate Protection Liens incurred by the DIP Loan Parties to the DIP Agents, the DIP Lenders or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agents or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this

Interim Order, and the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code (including, without limitation, in respect of any payments received in connection with the discharge of the Prepetition ABL Debt), this Interim Order and the DIP Documents with respect to all uses of Cash Collateral, the DIP Obligations and Adequate Protection.

(e)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the ABL Indemnification Liens, the Prepetition ABL Indemnification Obligations, the Prepetition Liens, the Prepetition Debt and the Adequate Protection and all other rights and remedies of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, substantively consolidating any of the cases with another case, terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations and with respect to the Prepetition Debt and the Prepetition ABL Indemnification Obligations (to the extent the ABL Discharge has not occurred). The terms and provisions of this Interim Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these

01:24256487.2

WEIL:\96951643\5\39681.0001

Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition ABL Indemnification Claims, the ABL Indemnification Liens, the Prepetition Debt, the Prepetition Liens and the Adequate Protection Claims and all other rights and remedies of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are Paid in Full, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated.

25. *Limitation on Use of DIP Financing Proceeds and Collateral.* Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Guarantor, any official committee appointed in the Chapter 11 Cases, or any trustee appointed in the Chapter 11 Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against any of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Debt, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the adequate protection, adequate protection liens and superpriority claims granted to the Prepetition Secured Parties under the Interim Order or the Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition Debt, the DIP Obligations and/or the liens, claims, rights,

or security interests granted under this Interim Order, the Final Order, the DIP Documents or the Prepetition Credit Agreements including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) to prevent, hinder, or otherwise delay the Prepetition Secured Parties', the DIP Agent's or the DIP Lenders', as applicable, enforcement or realization on the Prepetition Debt, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the Orders, each in accordance with the DIP Documents, the Prepetition Credit Agreements or this Interim Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties, the DIP Agents or the DIP Lenders under this Interim Order, the Prepetition Credit Agreements or the DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, adequate protection liens and superpriority claims and liens granted to the Prepetition Secured Parties, unless all DIP Obligations, Prepetition Debt, adequate protection, and claims granted to the DIP Agents, DIP Lenders or Prepetition Secured Parties under this Interim Order, have been refinanced or Paid in Full or otherwise agreed to in writing by the DIP Lenders; or (v) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the DIP Lenders in or are otherwise included in the "**Approved Budget**" (as initially attached to the Motion, and as updated in accordance with the terms of the DIP Documents).

26.    *Approved Budget.*   The Approved Budget is approved on an interim basis. Proceeds of the DIP Facilities and Cash Collateral under this Interim Order shall be used by the

Loan Parties in accordance with the DIP Credit Agreements and this Interim Order and consistent with the Approved Budget or as otherwise agreed by the DIP Agents. None of the DIP Secured Parties' consent (if any) to, or acknowledgment of, the Approved Budget shall be construed as consent to use of the proceeds of the DIP Facilities or Cash Collateral beyond the respective maturity dates set forth in the DIP Credit Agreements, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

27.     *Limits to Lender Liability.*  Subject to entry of the Final Order, nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents or any DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP Agents and the DIP Lenders comply with their DIP Obligations and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agents and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the DIP Loan Parties.

28.     *Effect of Stipulations on Third Parties.*  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 6 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes. The Debtors'

stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 6 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, if any (a "**Committee**") and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes unless: (a) such Committee, or any other party in interest, in each case with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) five (5) Business Days prior to the commencement of the hearing to confirm a chapter 11 plan, (y) 75 calendar days after entry of this Interim Order and (z) 60 calendar days after the appointment of any Committee or (ii) any such later date as has been agreed to, in writing, by the Prepetition Agents (with the consent of the DIP Lenders) as applicable (the time period established by the foregoing clauses (i) and (ii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Secured Parties or their respective affiliates and each of their respective former, current or future officers, partners, directors, managers, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as

such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Credit Agreements, the Prepetition Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred. For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 6 of this Interim Order, shall be binding on all parties in interest; (b) the obligations of the DIP Loan Parties under the Prepetition Credit Agreements, including the Prepetition Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid,

01:24256487.2

WEIL:\96951643\5\39681.0001

binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by any Committee, or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any Committee, if any, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Credit Agreements shall be deemed forever waived, released and barred. If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 6 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee, if any, and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Agreements, the Prepetition Debt or the Prepetition Liens. For the avoidance

WEIL:\96951643\5\39681.0001

of doubt, none of the foregoing challenge provisions set forth in this paragraph shall apply to any DIP Secured Party, in their capacities as such, and in no event shall the DIP Facilities, DIP Obligations or DIP Liens be subject to challenge pursuant to this paragraph on avoidance or any other grounds by any party.

29.     *Postpetition Release.*   In addition, subject to the entry of the Final Order, notwithstanding anything to the contrary set forth herein, upon the repayment of all DIP Obligations (as defined in the DIP Credit Agreements) owed to the DIP Agents and the DIP Lenders by Debtors and termination of the rights and obligations arising under the DIP Documents (which payment and termination shall be on terms and conditions acceptable to DIP Agents), DIP Agents and the DIP Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring, on or prior to the date of such repayment and termination, in connection with or related to the DIP Documents, or the Interim Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out on terms and conditions acceptable to the DIP Agents).

30.     *Landlord Agreements; Access.*   (a) All collateral access agreements to which the Prepetition ABL Agent or any of the Prepetition Agents is a party shall hereby continue to be deemed to be amended to include the relevant DIP Agent as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the relevant DIP Agent against, and binding upon, each landlord party thereto.  Subject to the entry of the Final Order, any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any DIP Collateral or Prepetition Collateral of the Debtors located on

such leased premises, to the extent the same is not avoidable under sections 544, 545, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, is hereby expressly subordinated to the liens of the DIP Lenders and the Prepetition Lenders.

(b) Without limiting any other rights or remedies of the DIP Agents or the other DIP Secured Parties set forth in this Interim Order, the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon three (3) business days' written notice to counsel to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, after the expiration of the Remedies Notice Period, that an Event of Default has occurred and is continuing, the DIP Agents, (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agents, enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon, and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, without unreasonable interference from landlords, lienholders, or licensors thereunder; provided, however, that the DIP Agents (on behalf of the applicable DIP Lenders) shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from the DIP Agents and that accrue during the period of such occupancy or use by DIP Agents calculated on a per diem basis. For the avoidance of doubt, (a) all of the Debtors' obligations under any applicable lease or license shall not be affected, limited, or otherwise modified by the rights granted to the DIP Agents pursuant to this paragraph and (b) any affected landlords,

WEIL:\96951643\5\39681.0001

lienholders, and/or licensors shall retain all remedies available under applicable non-bankruptcy law. Nothing herein shall require the Debtors, the DIP Agents or the other DIP Secured Parties, to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agents and the other DIP Secured Parties herein.

31. *Interim Order Governs.* In the event of any inconsistency between the provisions of this Interim Order, the DIP Documents or any other order entered by this Court (other than the Final Order), the provisions of this Interim Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including, without limitation, the Approved Budget.

32. *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral

66

(including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

33.    *Conversion to Exit Facility.*    Upon the entry of the Final Order and the satisfaction or waiver of the conditions precedent to the Conversion Date on the terms set forth in the Term DIP Documents and the entry by the Court of an order confirming an Acceptable Plan of Reorganization (as defined in the Term DIP Documents) and authorizing entry into the Exit Facility (as defined in the Term DIP Documents), the Conversion Date shall occur, and the Term DIP Facility shall convert to the Exit Facility on the terms set forth in the Term DIP Credit Agreement and the Exit Facility Agreement (as defined in the Term DIP Credit Agreement) without further notice to or order or other approval of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any person or entity (including the boards of directors or members, as applicable, of any of the DIP Loan Parties or the Reorganized Debtors (as defined in the Term DIP Documents)), except as otherwise required by the Term DIP Documents.  Upon the occurrence of the Conversion Date, so long as an Acceptable Plan of Reorganization has been confirmed by the Court, as provided for in the Term DIP Documents, the Term DIP Loan Parties and the Reorganized Debtors shall be authorized, in each case to the extent necessary, appropriate or desirable, to (i) enter into the Exit Facility Agreement and any related notes, documents or other agreements in connection with the Exit Facility, including, without limitation, the execution or recordation of security agreements, mortgages and financing statements or any other documents required in connection with the creation, perfection or continuation of the liens securing the Exit Facility, (collectively with the Exit Facility Agreement and any schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments delivered in connection therewith the

WEIL:\96951643\5\39681.0001

"**Exit Facility Documents**"), (ii) grant liens and security interests to provide security for the Exit Facility (iii) guarantee the obligations under the Exit Facility, (iv) perform all acts, to make, execute and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary to perform all of their obligations under the Exit Facility Agreement and the other Exit Facility Documents, and (v) take all such other actions as any Authorized Officer (as defined in the Exit Facility Agreement) of the Reorganized Debtors may determine are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the Exit Facility. For the avoidance of doubt, this paragraph 33 concerns and impacts the Term DIP Facility, not the ABL DIP Facility.

34.     *Exculpation.* Nothing in this Interim Order, the DIP Documents, the existing agreements or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or any Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Loan Parties (as defined in the DIP Credit Agreements) in the operation of their businesses, or in connection with their restructuring efforts. In addition, (a) the DIP Secured Parties and the Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the Collateral shall be borne by the DIP Loan Parties.

35.     *Limitation of Liability.* In determining to make any loan or other extension of credit under the DIP Credit Agreements, to permit the use of Cash Collateral or in exercising any

rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, none of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties shall (i) be deemed to be in "control" of the operations or participating in the management of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

36.     *Master Proof of Claim.* The Prepetition Agents shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Debt arising under the Prepetition Secured Debt Documents, nor shall any other Prepetition Secured Party be required to file any proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself for payment of the Prepetition Debt arising under the Prepetition Credit Agreements.  The statements of claim in respect of the Prepetition Debt set forth in this Interim Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each Prepetition Agent and/or other Prepetition Secured Party is authorized to file in the Debtors' lead chapter 11 case, Case No. 19-10497 (CSS), a single, master proof of claim on behalf of the relevant Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Secured Debt Documents and hereunder (each, a "**Master Proof of**

**Claim**") against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the Debtors, the Prepetition Agents and the Prepetition Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Credit Agreements, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 36 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.

37.    *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any Local Bankruptcy Rule, or Rule 62(a) of

01:24256487.2

WEIL:\96951643\5\39681.0001

the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

38.     Modification of DIP Documents and Approved Budget.  The DIP Loan Parties are hereby authorized, without further order of this Court, to enter into agreements with the DIP Secured Parties providing for any consensual non-material modifications to the Approved Budget or the DIP Documents, or of any other modifications to the DIP Documents necessary to conform the terms of the DIP Documents to this Interim Order, in each case consistent with the amendment provisions of the DIP Document.  Notwithstanding the foregoing, updates and supplements to the Approved Budget required to be delivered by the DIP Loan Parties under the DIP Documents shall not be considered material amendments or modifications to the Approved Budget or the DIP Documents.

39.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

40.     *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to Payment in Full of all DIP Obligations under the DIP Documents and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agents and the DIP Lenders (as applicable based on the specific asset at issue) and shall immediately

turn over such proceeds to the applicable DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

41.    *Credit Bidding.*  (a) Each of the DIP Agents shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the applicable DIP Obligations in any sale of the DIP Collateral, subject in all respects to the DIP ICA and the relative lien priorities set forth in **Exhibit A**; and (b) the Prepetition Secured Parties shall have the right to credit bid up to the full amount of their Prepetition Debt in any sale of the Prepetition Collateral, subject in all respects to the Prepetition Intercreditor Agreement, as applicable, and the relative lien priorities set forth in **Exhibit A**, in each case of (a) and (b), as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

42.    *No Third Party Rights.*  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

43.    *Bankruptcy Rules.*  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

44.    *Necessary Action.*  The Debtors are authorized to take any and all such actions as are necessary or appropriate to implement the terms of this Interim Order.

45.    *Retention of Jurisdiction.*  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the

Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

46.    *Final Hearing.*  The Final Hearing is scheduled for April 8 , 2019 at 2 :00 p.m. prevailing Eastern Time before this Court.

47.    *Objections.*  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon:

(a)    counsel to the Debtors, (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Matthew S. Barr (matt.barr@weil.com), Ronit J. Berkovich (ronit.berkovich@weil.com), and Christopher M. Lopez (chris.lopez@weil.com); and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801 (Attn:  M. Blake Cleary (mbcleary@ycst.com), and Matthew B. Lunn (mlunn@ycst.com));

(b)    counsel to the ABL DIP Agent, (i) Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022-6069 (Attn: Joel Moss (Joel.Moss@Shearman.com) and Jordan Wishnew (jordan.wishnew@shearman.com); and (ii) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801 (Attn: Mark D. Collins (Collins@rlf.com), and Jason M. Madron (Madron@rlf.com));

(c)    counsel to the Term DIP Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn.: Damian Schaible (damian.schaible@davispolk.com), Michelle McGreal (michelle.mcgreal@davispolk.com) and Stephen Piraino (stephen.piraino@davispolk.com));

(d)    counsel to the Prepetition ABL Secured Parties and ABL DIP Arranger, Otterbourg, P.C., 230 Park Avenue, New York, NY 10169 (Attn: Andrew M. Kramer (akramer@otterbourg.com));

(e)    Counsel to the Prepetition First Lien Term Loan Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn.: Damian Schaible (damian.schaible@davispolk.com), Michelle McGreal (michelle.mcgreal@davispolk.com) and Stephen Piraino (stephen.piraino@davispolk.com));

(f)    the U.S. Trustee; and

(g)    any other party that has filed a request for notices with this Court,

to allow actual receipt by the foregoing no later than ___*April 1*___, 2019 at 4:00 p.m.,
prevailing Eastern Time.

48.     The Debtors shall within two (2) business days of its entry serve copies of this
Interim Order (which shall constitute adequate notice of the Final Hearing, including, without
limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights
under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given
notice of the Interim Hearing, to any party that has filed a request for notices with this Court.

Dated:     March 12, 2019
           Wilmington, Delaware

_____
           Christopher S. Sontchi
           UNITED STATES BANKRUPTCY JUDGE

WEIL:\96951643\5\39681.0001