# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CTI FOODS, LLC, *et al.*, | : | Case No. 19-10497 (CSS) |
| | : | |
| | : | Hearing Date: April 18, 2019, at 1:00 p.m. |
| Debtors. | : | Objections Due: April 11, 2019, at 4:00 p.m. |
| | : | Extended to April 15, 2019 |
| | : | |

## OBJECTION BY THE UNITED STATES
## TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT OF CTI FOODS, LLC AND ITS AFFILIATED DEBTORS

The United States, by and through the undersigned attorneys, in support of its objection to the Joint Prepackaged Plan of Reorganization of CTI Foods, LLC and its Affiliated Debtors, ("Plan") [Docket No. 17] and the Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of CTI Foods, LLC, ("Disclosure Statement") [Docket No. 16] avers as follows:

### BACKGROUND

1. On March 11, 2019, twenty-six (26) business days ago, CTI Foods, LLC, and sixteen related Debtors ("Debtors") filed a voluntary bankruptcy petitions seeking relief under Chapter 11 of the Bankruptcy Code.

2. No Unsecured Creditors Committee has been appointed in these cases by the Office of the United States Trustee.

3. On March 11, 2019, the Debtor sought to combine the hearing on the Plan and Disclosure Statement. ("Waiver Motion") [Docket No. 15]. Ordinarily, Bankruptcy Rule 2002(b) requires that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees not less than 28 days' notice by mail of the time fixed (1) for filing objections and the hearing to consider approval of a disclosure statement . . . and (2) for filing objections and the

hearing to consider confirmation of a chapter 9, chapter 11, or chapter 13 plan." The Court entered an order setting the confirmation hearing for April 18, 2019.  ("Waiver Order") [Docket No. 72].

4. On March 12, 2019, the Debtors filed a Redacted List of Creditors ("Creditor List"). [Docket No. 54]. The Creditor List included approximately 20 references to the U.S. Department of Treasury and 27 references to the U.S. Department of Agriculture.  The Creditor List also included the Equal Employment Opportunity Commission, the U.S. Food and Drug Administration, the U.S. Department of Education, the U.S. Department of Health and Human Services, the U.S. Postal Service, the U.S. Department of Homeland Security, the Environmental Protection Agency and the U.S. Department of Justice. The Creditor List fails to identify the nature of the debts owed or to provide any information about amounts owed to creditors.

5. The Debtors sought, through the vehicle of the Waiver Motion, to extend the time for the Debtors to file schedules of assets and liabilities and statements of financial affairs ("Schedules and Statements") through and including May 3, 2019, (the "SOAL/SOFA Deadline") and to conditionally waive the requirement that the Debtors file the Schedules and Statements upon confirmation of the Plan.  Paragraph 47 of the Waiver Motion provides "[s]ufficient cause exists here for such further extension through and including the SOAL/SOFA Deadline, which is May 3, 2019. The purposes of filing the Schedules and Statements are to provide notice to creditors and to disclose information about the Debtors to holders of Claims. Here, however, the benefits of filing the Schedules and Statements would be time consuming, distracting to the Debtors' advisors and management, and costly to the Debtors' estates, while providing little benefit to most parties in interest in these chapter 11 cases at that point. No party in interest would be prejudiced by the Court granting the Debtors' request for an extension

through and including the SOAL/SOFA Deadline because the Debtors have proposed the Prepackaged Plan, under which trade claims and other general unsecured claims will ride through these chapter 11 cases unimpaired. Therefore, the Court should extend the deadline for filing the Schedules and Statements through and including the SOAL/SOFA Deadline and waive the requirement altogether if the Prepackaged Plan is confirmed in accordance with the timetable proposed by the Debtors." The Court approved the conditional waiver of the filing of the Schedules and Statements and the SOAL/SOFA Deadline was extended through June 3, 2019.

6. The Debtors also requested in the Waiver Motion that they be excused from the requirement to convene the meeting of creditors under section 341 of the Bankruptcy Code if the Plan becomes effective on or before the SOAL/SOFA Deadline. The Debtors justify this extraordinary relief in paragraph 51 of the Waiver Motion by explaining that "[t]he purpose of the Section 341 Meeting is to provide parties in interest with a meaningful opportunity to obtain and examine important information about a debtor. In these chapter 11 cases, however, the solicitation of the Prepackaged Plan was commenced prior to the Petition Date, and the Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code. The Debtors intend to proceed expeditiously to confirm the Prepackaged Plan and emerge from chapter 11 as quickly as possible. Therefore, parties are not likely to receive any benefit from a Section 341 Meeting." The waiver of the 341 Meeting was approved in the Waiver Order.

### ARGUMENT

7. **Lack of Adequate Notice.** The United States objects to the Disclosure Statement and Plan because it has not been afforded adequate notice to determine its interests in these bankruptcy cases and to gauge the effect of the Plan on those interests. Although government

entities have no right to due process under the Fifth Amendment's due process clause, *see United States v. Cardinal Mine Supply,* 916 F.2d 1087, 1089 n. 3 (6th Cir.1990) (citing *South Carolina v. Katzenbach,* 383 U.S. 301, 323–24 (1966)), the Supreme Court recognized in *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 297 (1953), it is "a basic principle of justice . . . that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." As noted by the Sixth Circuit in *Cardinal Mine Supply,* 916 F.3d at 1090, where the adequacy of notice to the IRS was at issue:

> *City of New York* was not decided upon due process grounds, for the city of New York, like the IRS in the present case, does not have a constitutional right to due process. *City of New York* involved a statutory mandate that notice be given, and section 342 of the Bankruptcy Code provides a similar mandate. This section provides: "There shall be given such notice as is appropriate of an order for relief in a case under this title." 11 U.S.C. § 342. The legislative history of this provision notes that "[d]ue process will certainly require notice to all creditors.... State and Federal governmental representatives responsible for collecting taxes will also receive notice." S.Rep. No. 989, 95th Cong., 2d Sess. 42 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5828, reprinted in Collier on Bankruptcy, App. vol. 3 (15th ed.1990).

Furthermore, at least one court has held that "[t]he language in *City of New York* clearly is not grounded in goals unique to the former bankruptcy act." *Spring Valley Farms, Inc. v. Crow,* 863 F.2d 832, 835 (11th Cir.1989). The Court's reasoning in *City of New York* is equally applicable here. Thus, the basic principle of justice that notice and an opportunity to be heard are necessary before a party's claim is barred or adversely affected applies to the present case as well. *Cardinal Mine Supply,* 916 F.2d at 1090. "In the case of governmental entities, 'adequate notice' must satisfy requirements of 'fundamental fairness.'" *In re Friedman,* 184 B.R. 883, 888 n. 1 (Bankr. N.D.N.Y. 1994); *see also In re Hairopoulos,* 118 F.3d 1240, 1244 n. 3 (8th Cir.1997); *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (10th Cir. 1987) (holding that Bankruptcy Rule 2002(a)(8) requires that all creditors receive adequate notice); *In re Aboody*,

223 B.R. 36, 40 (1st Cir. B.A.P. 1998) (governmental entities entitled to whatever statutory due process a legislative scheme applies).

8. Because the government is a large and complex organization, it requires more time than a typical bankruptcy creditor to canvas its agencies and determine its claims. Based on the more than 50 references in the Creditor List to federal entities, it is clear that there are federal interests at stake in these bankruptcy cases. As explained below, the Plan irrevocably alters creditor rights upon confirmation and impairs their claims. The United States objects to the speed at which the Plan is being confirmed. The United States has had an inadequate opportunity to determine the amount and nature of its claims and interests and, therefore, cannot determine the impact the Plan's provisions will have on its interests. The creditor information filed by the Debtor is incomplete, at best, and provides very little actual notice to those claim holders whose interests are being harmed by the Plan.

9. **The Definition of Allowed Claims does not Comport with the Bankruptcy Code.** The United States objects to the definition of Allowed in Article I, Section 1.1 of the Plan. The Plan provides in pertinent part that a claim shall be Allowed only if the Debtors and the creditor agree to the amount of the claim, if the claim is determined by a Final Order, if it is expressly allowed by the Plan or if it is listed the Debtor's Schedules. This Plan provision is inconsistent with Section 502(a) of the Bankruptcy Code which provides that a claim is deemed allowed unless a party in interest objects to the claim.

10. **No Consent.** Article IV, section 4.6 of the Plan provides that Allowed General Unsecured Claims are unimpaired. The Plan states that the legal, equitable, and contractual rights of the holders of Allowed General Claims are unaltered by the Plan. On and after the Effective Date, or as soon as reasonably practicable thereafter, the Plan provides that the Debtors shall

continue to pay or dispute each General Unsecured Claim in the ordinary course of business as if the Chapter 11 Cases had never been commenced. The caveat to receiving this treatment is that a holder of a General Unsecured Claim can consent to different treatment. Because holders of General Unsecured Claims were deemed unimpaired by the Plan, they did not receive full solicitation packages containing the Plan and Disclosure Statement. If they had, they might realize that there are many hidden "consents" in the Plan that work to impair their claims. For example, Article X, section 10.6(b) provides that by accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in section 10.6 of the Plan. Or consider Article V, section 5.1 that provides that all of the provisions in the Plan shall constitute a good faith compromise of all contractual, legal and subordination rights that a creditor has with respect to any Allowed Claim. Article VI, section 6.9 provides that unless otherwise provided in the plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims. These Plan provisions are inconsistent with the purported "ride through" treatment of general unsecured claims promised by the Debtors.

11.  **Overbroad Discharge.**  The United States objects to Section 10.3's discharge of "rights and liabilities" and Section 10.6's enjoining of "any suit, action, or other proceeding of any kind." Section 1141(d) (1) of the Code provides that "the confirmation of a plan … discharges the debtor from any debt that arose before the date of such confirmation." "Debt" is defined as "liability on a claim," 11 U.S.C. § 101(12).   The Code provides no basis for a discharge of suits, actions, liabilities, or proceedings that are not claims under the definitions of the Code. See, e.g., *In re Torwico Electronics, Inc.*, 8 F.3d 146 (3d Cir. 1993).   Section 1129(a)(1)

of the Code, 11 U.S.C. § 101(12), requires that the Plan comply with the provisions of the Bankruptcy Code. Indeed, here the Plan allegedly does not impair or discharge unsecured claims; it surely should therefore not be discharging or enjoining interested parties' rights that are not even claims under the Bankruptcy Code.

12. **Non-Debtor Releases.** The United States objects to the third-party non-debtor limitation of liability, exculpation, injunction and release provisions set forth in Article X of the Plan. The injunction provisions violate the Anti-Injunction Act, I.R.C. Section 7421(a). *See American Bicycle Association v. United States*, 895 F.2d 1277 (9th Cir. 1990); *United States v. Prescription Home Health Care, Inc.*, 316 F.3d 542 (5th Cir. 2002); *In re Plainwell, Inc.,* 2004-2 USTC Paragraph 50, 393 (D. Del. 2004). The Plan currently defines parties to be released as the "Released Parties" which encompasses numerous entities. Correspondingly, the release and injunction provisions of the Plan extend its protections to the Released Parties. While the Third Circuit stopped short of adopting a *per se* rule that a non-debtor release in a reorganization plan is not permissible (as other circuits have done), it held that, at most, such a provision could only be valid in "extraordinary" cases. *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 212 (3d Cir. 2000). At minimum, *Continental* held that such a nonconsensual release of non-debtor entities must contain all of the following "hallmarks": "fairness, necessity to the reorganization, and specific factual findings to support these conclusions." *Id*. at 214*; see also In re: Wash. Mut., Inc*., 442 B.R. 314, 351-52 (Bankr. D. Del. 2011) (collecting cases). This Court has interpreted *Continental*'s holding on non-debtor releases to mean that "limiting the liability of non-debtor parties is a *rare thing that should not be considered absent a showing of exceptional circumstances* in which several key factors are present." *In re Genesis Health Ventures, Inc.,* 266 B.R. 591, 608 (Bankr. D. Del. 2001) (emphasis added). This Court has

previously held that a non-debtor release over a creditor's objection "would not pass muster." *Wash. Mut.*, 442 B.R. at 352 ("This Court has previously held that it does not have the power to grant a third-party release of a non-debtor."). Where this Court has even contemplated approval of a non-consensual release, it has required the following factors be present to justify the "rare" release: "(1) the non-consensual release was necessary to the success of the reorganization, (2) the releasees have provided a critical financial contribution to the debtor's plan, (3) the releases' financial contribution is necessary to make the plan feasible, and (4) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the releases." *In re Tribune Co.*, 464 B.R. 126, 177-78 (Bankr. D. Del. 2011); *see also Genesis Health Ventures*, 266 B.R. at 607-09. 52. Here, setting aside the question of whether the Debtor has made such a showing against all creditors generally (and they have not), the Debtor makes no adequate showing of a single factor, let alone all of the *Tribune / Genesis* factors, that justifies the extraordinary release of non-debtors with respect to their potential liability to the United States.

13. **Setoff and Recoupment.** The United States objects to the Plan to the extent it fails to preserve the setoff and recoupment rights of the United States. Confirmation of a plan does not extinguish setoff claims when they are timely asserted. *United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 542 (3d Cir. 1998), *cert. denied*, 525 U.S. 929 (1998). Like other creditors, the United States has the common law right to setoff mutual debts. "The government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234 (1947) (citing *Gratiot v. United States*, 40 U.S. (15 Pet) 336, 370, 10 L.Ed. 759 (1841)); *see also Amoco Prod. Co. v. Fry*, 118 F.3d 812,

817 (D.C. Cir. 1997). This right – "which is inherent in the federal government – is broad and 'exists independent of any statutory grant of authority to the executive branch.'" *Marre v. United States*, 117 F.3d 297, 302 (5th Cir. 1997) (quoting *United States v. Tafoya*, 803 F.2d 140 (5th Cir. 1986)). Hence, the United States can setoff mutual prepetition debts and claims as well as postpetition debts and claims. *Zions First Nat'l Bank, N.A. v. Christiansen Bros. (In re Davidson Lumber Sales, Inc.)*, 66 F.3d 1560, 1569 (10th Cir. 1995); *Palm Beach County Bd. Of Pub. Instruction (In re Alfar Dairy, Inc.)*, 458 F.2d 1258, 1262 (5th Cir.), *cert. denied*, 409 U.S. 1048 (1972); *Mohawk Indus., Inc. v. United States (In re Mohawk Indus., Inc.)*, 82 B.R. 174, 178-79 (Bankr. D. Mass. 1987). The Plan makes no provision for these rights. Such treatment is impermissible, because Section 553 of the Bankruptcy Code preserves the right of setoff in bankruptcy as it exists outside bankruptcy, *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995), neither expanding nor constricting it, *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998). "[T]he government of the United States suffers no special handicap under § 553 of the Bankruptcy Code," *id.* at 1103, that alters this principle. Moreover, because "[s]etoff occupie[s] a favored position in our history of jurisprudence," *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164 (2d Cir. 1979), courts do not interfere with its exercise absent "the most compelling circumstances." *Niagara Mohawk Power Corp. v. Utica Floor Maintenance, Inc. (In re Utica Floor Maintenance, Inc.)*, 41 B.R. 941, 944 (N.D.N.Y. 1984); *see also New Jersey Nat'l Bank v. Gutterman* (*In re Applied Logic Corp.*), 576 F.2d 952 (2d Cir. 1978) ("The rule allowing setoff ... is not one that courts are free to ignore when they think application would be unjust."). Compelling circumstances generally entail criminal conduct or fraud by the creditor. *In re Whimsy, Inc.*, 221 B.R. 69 (S.D.N.Y. 1998). No such compelling circumstances are present here, and accordingly, the Plan must provide for and preserve the government's setoff rights. Failure

to do so violates section 1129(a)(1). ("The court shall confirm a plan only if ... the plan complies with the applicable provisions of this title".)

14. **No Interest.** Article VI, section 6.2 of the Plan states "[e]xcept as otherwise provided in the Plan, the Plan Documents or the Confirmation Order, postpetition interest shall accrue, and shall be paid, on any Claim (except for First Lien Term Loan Claims and Second Lien Term Loan Claims) in the ordinary course of business in accordance with any applicable law, agreement, document, or Final Order, as the case may be, as if the Chapter 11 Cases had never been commenced." Presumably, if the Plan provides for a certain treatment of a claim but does not specifically provide for interest on the claim, the Debtors will argue no interest is due. Article II, section 2.3 of the Plan provides for the payment of Allowed Priority Tax Claims in full and final satisfaction of those claims without requiring interest to be paid on the claims. The United States objects to Article II, Section 2.3 to the extent this provision fails to provide for an adequate rate of interest from the Effective Date on its Priority Tax Claims. Moreover, the United States objects to Article VII, section 7.6 of the Plan because it provides that a Disputed Claim that becomes an Allowed Claim will not be paid post-Effective Date interest on account of such claim unless it is required by the Bankruptcy Code. This scheme is inconsistent with the Debtors representations to creditors that their claims will be determined and treated as if the Chapter 11 bankruptcy cases had not been filed.

15. **No Settlement.** Article V, section 5.1 of the Plan compromises and settles claims, interests and controversies. It provides that "[p]ursuant to section 363 and 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and

subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interest and controversies, as well as a finding by the Bankruptcy court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable and reasonable." While it is easy to see how this provision is in the best interests of the Debtors and the Reorganized Debtors, the onerous, one-sided settlement provisions in the Plan are most certainly not fair and equitable to creditors or parties in interest.

Section 1123(b)(3)(A) of the Bankruptcy Code provides for the settlement or adjustment of any claim belonging to the Debtors or to the estates. The Debtors are not settling their own claims but instead are attempting to settle the unknown claims of unknown creditors without providing adequate notice. The United States has not been afforded an adequate opportunity to determine its claims or causes of action much less have such claims or causes of action be settled for some amount determined as sufficient by the Debtors. The treatment and payment of claims under the Plan is the antithesis of settlement. Settlement is the consensual agreement between two or more parties to resolve a dispute. The Plan impairs claims by altering contractual rights, requiring exclusive bankruptcy court jurisdiction and providing broad third-party releases. Here, with the general unsecured creditors being dragged through the bankruptcy process without the opportunity to vote, the Plan hardly represents a consensual agreement between the general unsecured creditors and the Debtors. By virtue of the Plan process, the United States does not waive sovereign immunity and has not consented to the compromise or settlement of its claims or causes of action and this provision is unfairly prejudicial to the rights of the United States.

16. **Contracts.** The United States objects to the treatment of any federal contracts or other agreements in accordance with Article VIII of the Plan. Multiple provisions relating to the assumption and assignment and cure are improper and objectionable. Article VIII, Section 8.1(a) of the Plan provides that all executory contracts "shall be deemed assumed" by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code. The United States objects to the assumption and assignment of any of its contracts and agreements to the extent the Debtors fail to obtain the consent of the United States and to comply with all applicable non-bankruptcy federal law. The Debtors are not entitled to assume and assign contracts with the United States without its consent. Under 11 U.S.C. § 365(c)(1)(A) a debtor "may not assume or assign any executory contract or unexpired lease of the debtor . . . if applicable law excuses such a party, other than the debtor, to such a contract or lease from accepting performance from or rendering performance to any entity other than the debtor or the debtor in possession." Moreover, the Anti-Assignment Act, 41 U.S.C. § 6305(a), provides:

> The party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party. A purported transfer in violation of this subsection annuls the contract or order so far as the Federal Government is concerned, except that all rights of action for breach of contract are reserved to the Federal Government.

The Third Circuit has confirmed that under the Anti-Assignment Act, debtors may not assign or assume an executory contract with the United States without first obtaining its consent. *In re West Electronic, Inc.,* 852 F.2d 79, 83 (3d Cir. 1988). Preserving the Government's ability to determine with whom to contract is imperative. Section 363 of the Bankruptcy Code does not preempt this aspect of non-bankruptcy law. The United States does not consent to the assumption, or the assumption and assignment, of any contract or lease.

17. Moreover, Article VIII, section 8.2(d) of the Plan provides in pertinent part that assumption of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption. The Debtors' desire to avoid contractual change in control provisions is reinforced by Article X, section 10.12 of the Plan which provides that"[a]ny term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation of the Debtor as a result of, or gives rise to a right of any Entity based on (i) the insolvency or financial condition of a Debtor, (ii) the commencement of the Chapter 11 Cases, (iii) the confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation, or (iv) the Restructuring Transactions." The United States objects to the Plan because it potentially impairs the legal, equitable and contractual rights of the United States by limiting the definition of Cure Amount to cash or other property to cure any default by the Debtors. Pursuant to 365(c)(1) of the Bankruptcy Code, the United States does not excuse or consent to the waiver of any default provisions arising under any federal agreement.

18. **<u>Exclusive Jurisdiction.</u>** The United States objects to Article XI of the Plan to the extent that it provides for the retention of exclusive jurisdiction. *See* 28 U.S.C. 1334. While "the bankruptcy court plainly [may retain] jurisdiction to interpret and enforce its own prior orders," *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009), it may not divest other courts of

their concurrent jurisdiction to interpret bankruptcy court orders. Rather, if for example, the United States, post-confirmation, asserts liabilities in a non-bankruptcy court of competent jurisdiction, that court may hear and determine all issues raised in the action, including whether the defendant can rely on the confirmation order as an affirmative defense. Adjudication of such a defense is a proceeding over which the bankruptcy court, as a unit of the district court, has "original but not exclusive jurisdiction." 28 U.S.C. § 1334(b) (emphasis added); *see also Stern v. Marshall*, 131 S.Ct. 2594 (2011); *In re Mystic Tank Lines Corp.*, 544 F.3d 524 (3d Cir. 2008) ("No provision of the Bankruptcy Code requires the Bankruptcy Court to hear all 'related to' claims . . . the only aspect of the bankruptcy proceeding over which the district courts and their bankruptcy units have exclusive jurisdiction is 'the bankruptcy petition itself.'") (citing *In re Wood*, 825 F.2d 90, 92 (5th Cir.1987)); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 224-225 (3d Cir. 2004), as amended (Feb. 23, 2005) ("Section 105(a) permits a bankruptcy court to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions' of the Bankruptcy Code. But as the statute makes clear, § 105 does not provide an independent source of federal subject matter jurisdiction."); *In re Skyline Woods Country Club*, 636 F.3d 467 (8th Cir. 2011); *Whitehouse v. LaRoche*, 277 F.3d 568, 576 (1st Cir. 2002).

19. The United States also objects to the retention of exclusive jurisdiction in the Plan because it is at odds with the representations made by the Debtors in Article VII, section 7.1, and throughout the Plan, that the holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of their claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced. While Article 11, section 11.1(e) provides that the Bankruptcy Court shall retain exclusive jurisdiction on and after the Effective Date to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any

Claim, Article VII, section 7.1 provides in pertinent part "[t]he holders of Claims shall not be subject to any claims resolution process in the Bankruptcy Court in connection with their Claims and shall retain all their rights under applicable non-bankruptcy law to pursue their Claims against the Debtors against the Debtors or Reorganized Debtors in any forum with jurisdiction over the parties." These provisions are fundamentally inconsistent.

20. **The Plan Should Control.** On March 25, 2019, fifteen (15) business days ago, the Debtors filed a 485 page Plan Supplement. Article I, section 1.5 provides "[i]n the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document…" In the event of a conflict, the Plan terms should control over those of the Plan Supplement. Although notice to creditors of the Plan terms is inadequate, it is superior to the notice creditors have been given of the terms contained in the Plan Supplement.

21. **No Immediate Binding Effect.** Article XII, section 12.8 of the Plan provides in pertinent part that "[n]otwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns." The United States does not consent to the truncation of its statutory protections. This provision negatively affects the United States' appeal rights. If the Debtors consummate the Plan immediately after confirmation, the Debtors are effectively requesting that the Court shorten the time for appeal afforded by the federal bankruptcy rules. Pursuant to Rules 6004(h), 7062 and 3020(e) of the Federal Rules of Bankruptcy Procedure, unless otherwise ordered by the Court, an automatic fourteen-day stay is

imposed from the date of entry of the order. Under the Debtors' proposed scheme, if the United States is unable immediately to obtain a hearing before the appropriate Court to seek a stay, its appeal may be contended to be moot. Particularly in light of the appellant being a government agency, with a chain of command to be consulted, this unilateral ability of the Debtors to truncate the stay period would be unfair and prejudicial to the government.

## CONCLUSION

**WHEREFORE,** United States respectfully requests that the Court not approve the Disclosure Statement and deny confirmation of the Plan and grant such other and further relief as the Court deems necessary and just.

DAVID C. WEISS
United States Attorney

BY: */s/ Ellen Slights*_____
Ellen W. Slights (DE Bar No. 2782)
Assistant United States Attorney

Dated: April 15, 2019

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CTI FOODS, LLC, *et al.*, | : | Case No. 19-10497 (CSS) |
| | : | |
| | : | **Hearing Date: April 18, 2019, at 1:00 p.m.** |
| Debtors. | : | **Objections Due: April 11, 2019, at 4:00 p.m.** |
| | : | **Extended to April 15, 2019** |
| | : | |

## **AFFIDAVIT**

I HEREBY CERTIFY that on April 15, 2019 a copy of the OBJECTION BY THE UNITED STATES TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT OF CTI FOODS, LLC AND ITS AFFILIATED DEBTORS was served on the following in the manner indicated below:

*Debtors*
CTI Foods, LLC
504 Sansom Blvd.
Saginaw, Texas 76179
Attn: Jonathon Spiller
VIA FIRST CLASS MAIL

*Office of the United States Trustee*
Office of the United States Trustee for the
District of Delaware
844 N King St.
Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn: Jane Leamy
VIA EMAIL:
jane.m.leamy@usdoj.gov

*Proposed Counsels to the Debtors*
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, New York 10153
Attn: Matthew S. Barr, Esq., Ronit J.
Berkovich, Esq., and Lauren Tauro, Esq.
VIA EMAIL:
Matt.Barr@weil.com;
Ronit.Berkovich@weil.com;
Lauren.Tauro@weil.com

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, Delaware 19801
Attn: M. Blake Cleary, Esq. and Jaime
Luton Chapman, Esq.
VIA EMAIL:
mbcleary@ycst.com;
jchapman@ycst.com

17

*Counsel to the Ad Hoc Group and Cortland Capital Market Services LLC, as DIP Term Loan Agent*
Davis Polk & Wardwell, LLP
450 Lexington Avenue
New York, New York 10017
Attn: Damian S. Schaible, Esq. and Michelle McGreal, Esq.
VIA EMAIL:
damian.schaible@davispolk.com;
michelle.mcgreal@davispolk.com

*Counsel to Morgan Stanley Senior Funding, Inc., as Administrative Agent under the First Lien Term Loan Agreement and Second Lien Term Loan Agreement*
White & Case, LLP
1221 Avenue of the Americas
New York, New York 10020
Attn: Elizabeth Feld, Esq. and Charles Koster, Esq.
VIA EMAIL:
efeld@whitecase.com;
ckoster@whitecase.com

*Counsel to Wells Fargo Bank, National Association, as Administrative Agent under the ABL Credit Agreement*
Otterbourg, P.C.
230 Park Avenue
New York, New York 10169
Attn: Andrew Kramer, Esq. and Allen Cremer, Esq.
VIA EMAIL:
akramer@otterbourg.com;
acremer@otterbourg.com

*Counsel to Barclays Bank PLC, as the DIP ABL Agent*
Shearman & Sterling, LLP
599 Lexington Avenue
New York, New York 10022
Attn: Joel Moss, Esq. and Jordan Wishnew, Esq.
VIA EMAIL:
joel.moss@shearman.com;
jordan.wishnew@shearman.com

*Counsel to Goldman Sachs*
Akin Gump Strauss Hauer & Feld, LLP
One Bryant Park, Bank of America Tower
New York, New York 10036-6745
Attn: Ira Dizengoff, Esq. and Jason Rubin, Esq.
VIA EMAIL:
idizengoff@akingump.com;
jrubin@akingump.com

/s/ *Shane Macas*
Shane Macas
Legal Assistant