## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

| | |
|---|---|
| In re | :     **Chapter 11** |
| | : |
| **CTI FOODS, LLC,** *et al.,* | :     **Case No. 19-10497 (CSS)** |
| | : |
| | :     **(Jointly Administered)** |
| **Debtors.**[1] | : |

---------------------------------------------------------- x    Re: Docket Nos. 16 & 17

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(b) OF BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS AND (II) CONFIRMING JOINT PREPACKAGED CHAPTER 11 PLAN OF CTI FOODS, LLC AND ITS AFFILIATED DEBTORS

CTI Foods, LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), having proposed and filed the (A) *Joint Prepackaged Chapter 11 Plan of CTI Foods, LLC and its Affiliated Debtors*, dated as of March 7, 2019 and filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**") on March 11, 2019 [D.I. 17] (as supplemented and as otherwise amended in accordance with the terms thereof and this Order, the "**Plan**"), annexed hereto as **Exhibit A**, and that certain supplement to the Plan, dated and filed with the Court on March 25, 2019 [D.I. 101] (the "**Initial Plan Supplement**"), and that certain second supplement to the Plan, dated and filed with the Court on April 16, 2019 [D.I. 169] (the "**Second Plan Supplement**" and, together with the Initial Plan Supplement, and as the documents contained therein have been

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Chef Holdings, Inc. (8070); Chef Intermediate, Inc. (8653); CTIF Holdings, Inc. (0046); Chef Investment, LLC (3918); CTI Foods Acquisition LLC (3918); CTI Foods Holding Co., LLC (8320); CTI Services Corporation (2331); CTI Foods, LLC (3673); CTI Arlington, LLC (6103); CTI Saginaw I, LLC (6133); CTI King of Prussia, LLC (4771); CTI-SSI Food Services, LLC (8322); S & S Foods LLC (7447); Custom Food Products Holdings, LLC (2697); Custom Food Products, LLC (0697); Liguria Holdings, Inc. (8652); and Liguria Foods, Inc. (6446). The Debtors' mailing address is 504 Sansom Blvd., Saginaw, Texas 76179.

or may be further amended or supplemented, the "**Plan Supplement**") and (B) (i) *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of CTI Foods, LLC and its Affiliated Debtors*, dated as of March 7, 2019 and filed with the Court on March 11, 2019 [D.I. 16] (the "**Disclosure Statement**"), and (ii) appropriate ballots for voting on the Plan (the "**Ballots**"), in the forms attached as Exhibits "B" and "C" to the *Affidavit of Service of Solicitation Materials* (the "**Johnson Declaration**"), sworn to by Craig Johnson of Prime Clerk LLC, the Debtors' claims and noticing agent ("**Prime Clerk**") and filed with the Court on March 11, 2019 [D.I. 51], having been duly transmitted to holders of Claims[2] in compliance with the procedures (the "**Solicitation Procedures**") set forth in the Debtors' motion to approve the Scheduling Order (as defined below), filed with the Court on March 11, 2019 [D.I. 15]; and the Court having entered the *Order (I) Scheduling Combined Hearing to Consider (A) Approval of Disclosure Statement, (B) Approval of Solicitation Procedures and Forms of Ballots, and (C) Confirmation of Prepackaged Plan; (II) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (III) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (IV) Conditionally Waiving Requirement of Filing Statement of Financial Affairs and Schedules of Assets and Liabilities; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Establishing the Official Record Date for Holders Under the Second Lien Term Loan Agreement and Approving the Payment of Agency Fees; (VII) Conditionally Waiving Requirement to Convene the Section 341 Meeting of Creditors; and (VIII) Granting Related Relief Pursuant to Sections 105(a), 341, 521(a), 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 1007, 2002, 3017, and 3018*, entered March 12, 2019 [D.I. 72] (the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

01:24408450.1

"**Scheduling Order**") which, among other things, scheduled the combined hearing to approve the Disclosure Statement and consider confirmation of the Plan for April 18, 2019 (the "**Combined Hearing**"); and due notice of the Combined Hearing having been given to holders of Claims against and Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Scheduling Order, and the Solicitation Procedures, as established by the affidavits of service, mailing, and/or publication filed with the Court, including the *Affidavit of Service of Nuno Cardoso regarding the Notice of (I) Commencement of Chapter 11 Bankruptcy Cases, (II) Combined Hearing on Disclosure Statement, Confirmation of Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Objection Deadlines, and Summary of Debtors' Joint Prepackaged Chapter 11 Plan, and Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures*, filed March 22, 2019 [D.I. 99], (the "**Notice of Commencement Affidavit**"), and such notice being sufficient under the circumstances and no further notice being required; and due notice of the Plan Supplement having been given to holders of Claims against and Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, as established by the *Affidavit of Service of Christian Rivera Regarding Notice of Rescheduled (I) Omnibus Hearing Date and (II) Hearing to Consider Confirmation of Joint Prepackaged Chapter 11 Plan of CTI Foods, LLC and Its Affiliated Debtors and Notice of Filing of Supplement to Joint Prepackaged Chapter 11 Plan of CTI Foods, LLC and its Affiliated Debtors*, filed March 27, 2019 [D.I. 104], and such filings and notices thereof being sufficient under the circumstances and no further notice being required; and based upon and after full

01:24408450.1

consideration of the entire record of the Combined Hearing, including (I) the Disclosure Statement, the Plan (including the Plan Supplement), the Johnson Declaration, and the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of CTI Foods, LLC and its Affiliated Debtors*, filed with the Court on April 8, 2019 [D.I. 155] (the "**Tabulation Declaration**") and (II) the *Declaration of Kent Percy in Support of Debtors' Request for (I) Approval of Debtors' Disclosure Statement, (II) Final Approval of Solicitation Procedures and Forms of Ballots, and (III) Confirmation of Joint Prepackaged Chapter 11 Plan of CTI Foods, LLC and its Affiliated Debtors* filed contemporaneously herewith (the "**Confirmation Declaration**") and the *Debtors' Memorandum of Law in Support of (I) Approval of Debtors' Disclosure Statement, (II) Final Approval of Solicitation Procedures, and (III) Confirmation of Joint Prepackaged Chapter 11 Plan of CTI Foods, LLC and Its Affiliated Debtors* filed contemporaneously herewith (the "**Confirmation Brief**"); and objections to the approval of the Disclosure Statement or confirmation of the Plan all being withdrawn, resolved, or overruled on the merits by the Court; and the Court being familiar with the Disclosure Statement and the Plan and other relevant factors affecting the Chapter 11 Cases (as defined below); and the Court being familiar with, and having taken judicial notice of, the entire record of the Chapter 11 Cases; and upon the arguments of counsel and the evidence proffered and adduced at the Combined Hearing; and the Court having found and determined that the Disclosure Statement should be approved and the Plan should be confirmed as reflected by the Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor; the Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      Findings of Fact and Conclusions of Law.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). This Court has jurisdiction to consider this matter pursuant to sections 157 and 1334 of title 28 of the United States Code, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to section 157(b) of title 28 of the United States Code and this Court has jurisdiction to enter a final order with respect thereto.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to sections 1408 and 1409 of title 28 of the United States Code.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      Chapter 11 Petitions.  On March 11, 2019 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  No statutory committee has been appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

   D. <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.  Any resolution of objections to confirmation of the Plan explained on the record at the Combined Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservation of rights, if any, related to the Plan or confirmation of the Plan are overruled on the merits and denied in their entirety.

   E. <u>Burden of Proof</u>.  Each of the Debtors has met the burden of proving each element of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

   F. <u>Adequacy of Disclosure Statement</u>.  The Disclosure Statement (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, as amended (the "**Securities Act**"), (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (iii) is approved in all respects.

   G. <u>Solicitation</u>.  Prior to the Petition Date, as set forth in the Johnson Declaration, the Debtors, through Prime Clerk, caused the Plan, the Disclosure Statement (which includes, among other things, the Restructuring Support Agreement, a Valuation Analysis, a

Liquidation Analysis, and Financial Projections (as each term is described in the Disclosure Statement)), and the Ballots (collectively the "**Solicitation Package**") to be transmitted and served on each eligible holder of a Claim in Class 3 (First Lien Term Loan Claims) and Class 4 (Second Lien Term Loan Claims) (the "**Solicitation**"). Service of the Solicitation Package, including the continued postpetition solicitation of such Voting Classes (as discussed below), was made in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the applicable Local Rules, the Scheduling Order, and all other applicable provisions of the Bankruptcy Code and other applicable rules, laws, and regulations applicable to such Solicitation. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Claims in Class 3 (First Lien Term Loan Claims) and Class 4 (Second Lien Term Loan Claims) (the "**Voting Classes**"). The instructions on the Ballots advised parties that for a Ballot to be counted, the Ballot must be properly executed, completed, and delivered to Prime Clerk so that it was received by Prime Clerk no later than 5:00 p.m. (Prevailing Eastern Time) on April 1, 2019 (the "**Voting Deadline**"), unless such time was extended by the Debtors. The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for eligible holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan. The Debtors were not required to solicit votes from the holders of Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (ABL Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 10 (Intercompany Interests) as such Classes are Unimpaired under the Plan and, therefore, deemed to accept the Plan. The Debtors also were not required to solicit votes from the holders of Claims in Class 8 (Existing Holdings Interests) and Class 9 (Existing Profit Interests) as such

Classes are deemed to reject the Plan.  The Solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was conducted in good faith.  The Released Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

H.      Tabulation Results.  As described in the Tabulation Declaration, as of the Voting Deadline, 100% in amount and 100% in number of holders of Claims in Class 3 (First Lien Term Loan Claims) that voted on the Plan voted to accept the Plan and 100% in amount and 100% in number of holders of Claims in Class 4 (Second Lien Term Loan Claims) that voted on the Plan voted to accept the Plan.  Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, the Court finds that Class 3 (First Lien Term Loan Claims) and Class 4 (Second Lien Term Loan Claims) accepted the Plan.  All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and all other applicable rules, laws, and regulations.

I.      Mailing and Publication of Combined Notice.  As is evidenced by the Notice of Commencement Affidavit, the Debtors caused to be mailed the *Notice of (I) Commencement of Chapter 11 Bankruptcy Cases, (II) Combined Hearing on Disclosure Statement, Confirmation of Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Objection Deadlines, and Summary of Debtors' Joint Prepackaged Chapter 11 Plan, and Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related* Procedures, filed March 13, 2019 [D.I. 76] (the "**Combined Notice**") on all parties in interest as set forth in the Scheduling Order in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and the Solicitation Procedures.

Additionally, the Debtors published a notice substantially similar to the Combined Notice in the National Edition of the *New York Times* and *Dallas Morning News* as set forth in the *Affidavit of Publication* [D.I. 84]. In accordance with the Scheduling Order, the Combined Notice and all other notices, motions and other documents filed in these Chapter 11 Cases, were published on Prime Clerk's website at http://cases.primeclerk.com/CTIFoods. The Debtors have given proper, adequate, timely, and sufficient notice of the Combined Hearing, as required by the applicable provisions of the Bankruptcy Rules and the Scheduling Order, and proper, adequate, timely, and sufficient notice of the Disclosure Statement, the Plan, the deadlines for filing objections to the Disclosure Statement and Plan, and the deadline for voting on the Plan, substantially in accordance with the Scheduling Order. No other or further notice was or shall be required.

J.    <u>Joint Chapter 11 Plan</u>. The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being nonseverable and mutually dependent on the Plan for each other Debtor.

K.    <u>Plan Supplement</u>. On March 25, 2019, the Debtors filed the Initial Plan Supplement consisting of (i) the Exit ABL Agreement, (ii) the Exit Term Loan Agreement, (iii) the New Intercreditor Agreement, (iv) the Shareholders Agreement, (v) the Schedule of Retained Causes of Action, and (vi) the Management Incentive Plan. On April 16, 2019, the Debtors filed the Second Plan Supplement consisting of the initial board of directors of the Reorganized Chef Holdings, Inc. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. The Debtors reserve the right to alter, amend, update or modify any of the documents included within the Plan Supplement and any schedules, exhibits, or amendments thereto, prior to the Effective Date in accordance with the

terms of the Plan and the Restructuring Support Agreement and subject to the terms of this Order.

L.    <u>Bankruptcy Rule 3016</u>.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as proponents of the Plan.  The Debtors appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b).  The discharge, release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**Compliance with Requirements of Section 1129 of Bankruptcy Code**

M.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code and thereby satisfies section 1129(a)(1) of the Bankruptcy Code.  More particularly:

1.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to Administrative Expense Claims (Section 2.1 of the Plan), Fee Claims (section 2.2 of the Plan), Priority Tax Claims (section 2.3 of the Plan), fees, expenses, or disbursements required to be paid under the terms of the DIP Order (section 2.4 of the Plan), and DIP Facilities Claims (section 2.5 of the Plan), which need not be classified, Articles III and IV of the Plan classify and describe the treatment of ten (10) Classes of Claims against and Interests in the Debtors.  The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for improper purposes, and such Classes do not unfairly

discriminate between holders of Claims and Interests.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Articles III and IV of the Plan specify that Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (ABL Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 10 (Intercompany Interests) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

3.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Articles III and IV of the Plan designate Class 3 (First Lien Term Loan Claims), Class 4 (Second Lien Term Loan Claims), Class 8 (Existing Holdings Interests), and Class 9 (Existing Profit Interests) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

4.      No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

5.      Implementation of Plan (11 U.S.C. § 1123(a)(5)).  The Plan, including the various documents and agreements set forth in the Plan Supplement, provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including (i) all corporate actions as set forth more fully in section 5.2 of the Plan including the continued corporate existence of the Reorganized Debtors, (ii) the funding of the Plan, (iii) the cancellation of certain existing securities and agreements, (iv) the cancellation

of certain existing security interests, (v) the adoption of the Management Incentive Plan, (vi) the authorization, issuance, and delivery of the New Common Shares, (vii) the entry into the Exit ABL Agreement and the Exit Term Loan Agreement, (viii) the entry into the New Intercreditor Agreement, (ix) the continuation of all Intercompany Interests held by the Debtors, and (x) the taking of all necessary or appropriate actions by the Debtors or Reorganized Debtors, as applicable, to effectuate the Restructuring Transactions under and in connection with the Plan.

6.      Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).    The Amended Certificates of Incorporation have been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.   In addition, the issuance of the New Common Shares, which are not non-voting equity securities, complies with section 1123(a)(6) of the Bankruptcy Code.

7.      Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).   The Plan Supplement and section 5.6 of the Plan contain provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

8.      Impairment/Unimpairment of Classes of Claims or Interests (11 U.S.C. § 1123(b)(1)).   As contemplated by section 1123(b)(1) of the Bankruptcy Code, and pursuant to section 1124 of the Bankruptcy Code, Articles III and IV of the Plan classify and describe the treatment for the Unimpaired Classes and Impaired Classes as follows: (i) Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (ABL Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 10 (Intercompany

Interest) are Unimpaired and (ii) Class 3 (First Lien Term Loan Claims), Class 4 (Second Lien Term Loan Claims), Class 8 (Existing Holdings Interests), and Class 9 (Existing Profit Interests) are Impaired.

9.     Assumption and Rejection (11 U.S.C. § 1123(b)(2)).    Article VIII of the Plan addresses the assumption and rejection of executory contracts and unexpired leases and satisfies the requirements of section 365(b) of the Bankruptcy Code.    In accordance with section 8.2 of the Plan, as set forth in the Notice of Commencement Affidavit, the Debtors served a notice on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume such contracts or leases in connection with the Plan and indicating that Cure Amounts (if any) shall be asserted against the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business.    Any monetary amounts by which any executory contract or unexpired lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors or Reorganized Debtors, as applicable, upon assumption thereof.

10.     Retention of Causes of Action and Reservation of Rights (11 U.S.C. § 1123(b)(3)).    On March 25, 2019, the Debtors filed with the Court a Schedule of Retained Causes of Action as **Exhibit E** to the Plan Supplement [D.I. 101].

11.     Unaffected Rights of Holders of Claims (11 U.S.C. § 1123(b)(5)).    The Plan leaves unaffected the rights of holders of Claims and Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (ABL Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 10 (Intercompany Interests).    Thus, the Plan complies with section 1123(b)(5) of the Bankruptcy Code.

12.     <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

13.     <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  Section 8.2 of the Plan provides for the payment of Cure Amounts for each executory contract and unexpired lease to be assumed pursuant to the Plan.  The Debtors or the Reorganized Debtors, as applicable, have paid or will pay valid Cure Amounts in the ordinary course.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

N.     <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code.  Specifically:

1.     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

2.     The Debtors have complied with all other applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

3.     The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, the Scheduling Order, and all other applicable laws, rules, and regulations in transmitting the Plan, the Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

O.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the

Disclosure Statement, and the record of the Combined Hearing, and other proceedings held in these Chapter 11 Cases. The Plan and the Plan Documents were proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors. The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's length among the Debtors, the Restructuring Support Parties, and their respective professionals. Each of the Restructuring Support Parties supports confirmation of the Plan. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtors' successful reorganization.

P.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Q.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The Plan provides that the officers of the Debtors immediately before the Effective Date shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date. Additionally, the identity and affiliations of the persons proposed to serve as the initial directors of the Reorganized Debtors upon the Effective Date of the Plan have been fully disclosed in the Second Plan Supplement to the extent such information is available. The appointment to, or continuance

in, such offices of such persons is consistent with the interests of holders of Claims against and Interests in the Debtors and with public policy. Each such member will serve in accordance with the terms and subject to the conditions of the New Corporate Governance Documents.

R.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for rate changes by any of the Reorganized Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

S.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement and other evidence proffered or adduced at the Combined Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

T.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (ABL Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 10 (Intercompany Interests) are Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 8 (Existing Holdings Interests) and Class 9 (Existing Profit Interests) are Classes of Impaired Claims or Interests that are conclusively presumed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code. Class 3 (First Lien Term Loan Claims) and Class 4 (Second Lien Term Loan Claims) are Classes of Impaired Claims that have voted to accept the Plan in accordance with

01:24408450.1

sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors.

U.        Treatment of Administrative Expense Claims, Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).    The treatment of Allowed Administrative Expense Claims and Fee Claims pursuant to sections 2.1 and 2.2, respectively, of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.    The treatment of Priority Tax Claims pursuant to section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  The treatment of Other Priority Claims pursuant to section 4.1 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.

V.        Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Class 3 (First Lien Term Loan Claims) and Class 4 (Second Lien Term Loan Claims) are Classes of Impaired Claims that have voted to accept the Plan by the requisite majorities in accordance with section 1126 the Bankruptcy Code, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

W.        Feasibility (11 U.S.C. § 1129(a)(11)).  The information in the Disclosure Statement, the Confirmation Declaration, and the evidence proffered or adduced at the Combined Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) together with the record of the Chapter 11 Cases and the evidence presented at the Combined Hearing, establish that the Plan is feasible, that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course, that the incurrence of the obligations contemplated by the Plan will not result in the insolvency of the Debtors, and that confirmation of the Plan is not likely to

be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

X.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.    All fees currently payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to section 2.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Y.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.    Section 8.5 of the Plan provides that all employment policies and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, executory contracts under the Plan and, on the Effective Date, will be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.  The Plan therefore satisfies section 1129(a)(13) of the Bankruptcy Code.

Z.    <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.    The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA.    <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.    The Debtors are not individuals and, accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.    <u>No    Applicable    Non-Bankruptcy    Law    Regarding    Transfers (11 U.S.C. § 1129(a)(16))</u>.    The    Debtors    are    each    a    moneyed,    business,    or    commercial

corporation, and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

CC.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. Class 8 (Existing Holdings Interests) and Class 9 (Existing Profit Interests) are deemed to have rejected the Plan.  Based upon the evidence proffered, adduced, and presented by the Debtors at the Combined Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no holder of any Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Interest, and no holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim or Interest.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Classes 8 and 9.

DD.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan filed in each of these Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

EE.    <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds.   The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the Combined Hearing, the Debtors, the Released Parties, and the Exculpated Parties (i) have acted in "good faith" within

the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in section 10.8 of the Plan, as applicable.

GG.    _Satisfaction of Confirmation Requirements_.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

HH.    _Likelihood of Satisfaction of Conditions Precedent to the Effective Date_. Each of the conditions precedent to the Effective Date, as set forth in section 9.1 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

II.    _Implementation_.    The Plan Documents are essential elements of the Plan, and entry into each such Plan Document is in the best interests of the Debtors, the Estates, and holders of Claims and Interests.    The Plan Documents are incorporated by reference, are approved in all respects, and constitute an integral part of this Order.    The Debtors are hereby authorized to execute such Plan Documents and take all such further actions as are necessary to

implement such Plan Documents, including the payment of all fees, expenses, and other payments in accordance with the terms thereof. The Debtors have exercised reasonable business judgment in determining to enter into each of the Plan Documents, and the terms and conditions of all such Plan Documents, including the fees, expenses, and other payments set forth therein, have been and continue to be negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, non-avoidable, and enforceable agreements and not be in conflict with any federal, state, or local law. The Debtors have provided sufficient and adequate notice of each of the Plan Documents to all parties in interest in the Chapter 11 Cases.

JJ.    Executory Contracts and Unexpired Leases. The Debtors have exercised reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases pursuant to Article VIII of the Plan. Each assumption of an executory contract or unexpired lease pursuant to Article VIII of the Plan shall be legal, valid, and binding upon the Debtors or Reorganized Debtors and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or unexpired lease, all to the same extent as if such assumption were effectuated pursuant to an order of this Court under section 365 of the Bankruptcy Code entered before entry of this Order. Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Reorganized Debtors or their successors and assigns, as applicable, will cure defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the Plan.

KK.    <u>Injunction, Releases, and Exculpation</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions, releases, and exculpation set forth in the Plan, including in sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in the Plan if, as has been established here, based upon the record in the Chapter 11 Cases and the evidence presented at the Combined Hearing, such provisions (i) were given in exchange for good and valuable consideration, were integral to the agreement among the various parties in interest, as reflected in the Restructuring Support Agreement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest.  Failure to implement the injunctions, exculpation, and releases would seriously jeopardize the Debtors' ability to confirm and implement the Plan.  The release contained in section 10.7(b) of the Plan was disclosed and explained on the Ballots, in the Disclosure Statement, and in the Plan.  The release provisions contained in section 10.7(b) of the Plan are consensual under applicable law because the releases therein are provided only by (i) holders of all Claims and Interests who vote to accept the Plan, (ii) holders of all Claims or Interests that are Unimpaired under the Plan, (iii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, (iv) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, (v) the holders of all Claims or Interests who are deemed to reject the Plan and who do not file a timely objection to the releases provided for in section 10.7(b) of the Plan, and (vi) the holders of all Claims and

Interests who were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.  *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013); *see also In re New Gulf Res.*, LLC, No. 15-12566 (BLS) [D.I. 514] (Bankr. D. Del. Apr. 20, 2016); *In re Am. Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Jan. 27, 2016) [D.I. 687]; *In re Heartland Publ'ns, LLC, et al.*, No. 09-14459 (KG) (Bankr. D. Del. Apr. 16, 2010) [D.I. 244] (confirming plan providing that any party that fails to opt out on its ballot is deemed to provide a release).  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the injunctions, releases, and exculpation set forth in the Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors and their Estates, creditors, and equity holders.  The releases of non-Debtors under the Plan are fair to holders of Claims and Interests and are necessary to the proposed reorganization, thereby satisfying the applicable standards contained in *In re Indianapolis Downs*, 486 B.R. at 303, and are otherwise appropriate under *In re W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012).  Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties receiving such releases.  The release contained in section 10.7(b) of the Plan is an integral part of the Plan that is overwhelmingly supported by the Voting Classes.  The release contained in section 10.7(b) of the Plan facilitated participation in both the Plan and the chapter 11 process generally.  The release contained in section 10.7(b) of the Plan is instrumental to the Plan and was critical in incentivizing the parties, including the Consenting Creditors and Consenting Sponsors, to support the Plan.  The release contained in section 10.7(b) of the Plan was a core negotiation point in connection with the Restructuring Support Agreement and instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders.  The Released Parties have made

a substantial contribution to the Debtors' reorganization.    Among other things, (i) the Restructuring Support Parties negotiated a Restructuring Support Agreement with the Debtors whereby the Consenting Creditors agreed to partial equitization of their First Lien Term Loan Claims and Second Lien Term Loan Claims while leaving holders of General Unsecured Claims unimpaired, (ii)  the Plan has been unanimously accepted and approved by the Consenting Creditors, (iii) the DIP Lenders supported the Debtors' businesses during the Chapter 11 Cases by providing access to the DIP Facilities, and (iv) the Exit ABL Lenders (together with the Exit ABL Agent and Exit Arranger) committed to provide financing that will facilitate the Debtors' emergence from chapter 11 and support the Reorganized Debtors' businesses after the Effective Date.  As such, the release contained in section 10.7(b) of the Plan appropriately offers certain protections to parties that constructively participated in the Debtors' restructuring process and is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.

LL.    Exculpation.  The exculpation granted under the Plan is reasonable in scope and does not relieve any party of liability for an act or omission to the extent such act or omission is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.  The record of the Combined Hearing and these Chapter 11 Cases is sufficient to support the injunctions, releases, and exculpation provided for in the Plan, including sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.  Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and the evidence proffered, adduced, or presented at the Combined Hearing, this Court finds that the injunctions, releases, and exculpation set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law and are approved.  The failure to implement the injunctions, releases, and exculpation would seriously impair the Debtors' ability to confirm the Plan.

MM.    <u>Good Faith</u>.  The Debtors and the Released Parties have been and will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein and (ii) take any actions authorized and directed by this Order.

NN.    <u>Exit Facilities</u>.  The Exit ABL Facility is the best financing alternative available to the Debtors and is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  Additionally, the terms of the Exit Facilities are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the Debtors' Estates and their creditors.  The financial accommodations to be extended pursuant to the Exit Facilities Documents are being extended in good faith and for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law.

OO.    <u>Expiration of Challenge Period</u>.  Pursuant to the terms of the DIP Orders, the Challenge Period (as defined in the DIP Orders) expired on April 11, 2019 without an adversary proceeding or contested matter being timely and properly asserted in accordance with the Interim DIP Order (as defined in the Restructuring Support Agreement) with respect to the Prepetition ABL Debt or against any Prepetition ABL Secured Party (each, as defined in the DIP Orders).  Therefore, the releases, exculpations, and injunctions set forth in the Final DIP Order are effective, and nothing in this Order shall modify such releases and related protections provided to the DIP Lenders in the DIP Orders.

PP.     <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

QQ.     <u>New Corporate Governance Documents</u>.  The New Corporate Governance Documents (including that certain shareholders agreement, substantially in the form contained in the Plan Supplement, the "**Shareholders Agreement**") are necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  The New Corporate Governance Documents are in the best interests of the Debtors, the Reorganized Debtors, the Estates, and their creditors. The terms of the Amended By-Laws and the Amended Certificates of Incorporation are appropriate and consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1129, and 1142 of the Bankruptcy Code, and are necessary to the Debtors' successful emergence from chapter 11.  The execution, delivery, or performance by the Debtors or the Reorganized Debtors, as the case may be, of any of the New Corporate Governance Documents and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof is authorized by this Order.

RR.     <u>Exemption from Securities Laws</u>.  The issuance of and the distribution under this Plan of the New Common Shares shall be exempt, without further act or actions by any Entity, from registration under the Securities Act, and all rules and regulations promulgated thereunder, and any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code.  These Securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such

Securities, as that term is defined in section 1145(b) of the Bankruptcy Code.  In addition, such section 1145 exempt Securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

SS.    <u>Valuation</u>.  Based on the valuation analysis set forth in the Disclosure Statement, which the Court has determined to be credible, persuasive, and based on appropriate assumptions and valid analysis and methodology, the Court finds that the valuation implied by the Restructuring Transactions is the best measure of the Reorganized Debtors' value given the facts and circumstances of these Chapter 11 Cases.

TT.    <u>Conditions Precedent to Effective Date</u>.  The conditions precedent to the Effective Date set forth in section 9.1 of the Plan may be waived in writing by the Debtors and the Requisite Creditors without leave of or order of this Court; *provided, howeve*r, that the waiver of the conditions precedent set forth in (i) section 9.1(h) of the Plan may not be waived without the written consent of the Consenting Sponsors, (ii) sections 9.1(d), 9.1(e), and 9.1(g) may not be waived without the written consent of the Exit Arranger, and (iii) section 9.1(d) may not be waived without the written consent of the ABL Agent.

UU.    <u>Waiver of Stay</u>.  Given the facts and circumstances of the Chapter 11 Cases, it is appropriate that this Order shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062, and this Order shall take effect immediately upon its entry.

## **ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.      <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by this Court at the Combined Hearing in relation to confirmation of the Plan are hereby incorporated into this Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.      <u>Notice of Combined Hearing</u>.  Notice of the Combined Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

3.      <u>Solicitation</u>.  The Solicitation complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Scheduling Order, the Local Rules, and applicable non-bankruptcy law.

4.      <u>Ballots</u>.  The forms of Ballots annexed to the Johnson Declaration are in compliance with Bankruptcy Rule 3018(c), substantially conform to Official Form B 314, and are approved in all respects.

5.      <u>Disclosure Statement</u>.    The Disclosure Statement (i) contains adequate information of a kind generally consistent with the disclosure requirements of applicable non-bankruptcy law, including the Securities Act, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (iii) is approved in all respects.    To the extent that the Debtors' Solicitation prior to the Petition Date is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of Regulation D of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such Solicitation.    The solicitation to creditors was made only to those creditors who are "accredited investors" (within the meaning of rule 501(a) of Regulation D of the Securities Act).    Accordingly, the Disclosure Statement is hereby **APPROVED** as providing holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

6.      <u>Confirmation of Plan</u>.    The Plan and each of its provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy Code.    The documents contained in or contemplated by the Plan, including the Plan Documents, are hereby authorized and approved.    The terms of the Plan are incorporated by reference into and are an integral part of this Order.

7.      <u>Objections</u>.    To the extent that any objections (including any reservations of rights contained therein) to approval of the Disclosure Statement or confirmation of the Plan or other responses or reservations of rights with respect to confirmation of the Plan have not been

withdrawn prior to entry of this Order, such objections shall be, and hereby are, overruled on the merits and denied.

8.     <u>No Action</u>.    Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

9.     <u>Binding Effect</u>.    Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of this Order, the provisions of the Plan shall be immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and every holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under the Plan and whether such holder has accepted the Plan.

10.     <u>Free and Clear</u>.    Except as otherwise provided in the Plan, or any Plan Document (including the Exit Facilities Agreements), on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests.   Subject to the terms of the Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use,

acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by this Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Order.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Confirmation Date for Professional Persons' fees, disbursements, expenses, or related support services without application to this Court.

11.    <u>Implementation of Plan</u>.  After the Confirmation Date, the Debtors and the Reorganized Debtors, as applicable, and the appropriate officers, representatives, and members of the boards of directors thereof shall be authorized to and may issue, execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and take such other actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including the Restructuring Transactions, and all such other actions delineated in Article V of the Plan or otherwise contemplated by the Plan, without the need for any further approvals, authorization, or consents, except for those expressly required pursuant to the Plan or the Exit Facilities Documents.

12.    <u>Restructuring Transactions</u>.  On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions consistent with the Plan as may be necessary to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan and this Order.

13. <u>Designation of Directors Approved</u>.    On the Effective Date, the designation of the New Board and the board of directors of any other Reorganized Debtor, as disclosed in the Second Plan Supplement shall be consistent with the terms of the Plan and the terms of the applicable New Corporate Governance Documents.    Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of this Court, the Reorganized Debtors, or their security holders.

14. <u>Authorization to Consummate</u>.    The Debtors are authorized to consummate the Plan after the entry of this Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in the Plan.

15. <u>Issuance of New Common Shares</u>.    On the Effective Date, Reorganized Chef Holdings, Inc. is authorized to issue or cause to be issued and shall issue the New Common Shares for distribution in accordance with the terms of the Plan without the need for any further corporate or shareholder action.    The New Common Shares shall be, upon execution and delivery, legal, valid, and binding obligations of the Reorganized Debtors and enforceable against the Reorganized Debtors in accordance with their respective terms and applicable law.

16. <u>New Corporate Governance Documents</u>.    The New Corporate Governance Documents (including the Shareholders Agreement) are hereby approved.    The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, and certificates relating to the New Corporate Governance Documents (including the Shareholders Agreement)

and to take such other actions as reasonably deemed necessary to perform their obligations thereunder.

17.    <u>New Shareholders' Agreement</u>.  Reorganized Chef Holdings, Inc. and all of the holders of New Common Shares shall be deemed to be parties to the Shareholders Agreement, without the need for execution by any such holder.  The Shareholders Agreement shall be binding on the Reorganized Chef Holdings, Inc. and all parties receiving, and all holders of, New Common Shares, regardless of whether such parties execute the Shareholders Agreement, as if such parties had actually signed the Shareholders Agreement.  Any direct or beneficial recipient of the New Common Shares, including all parties to whom such recipients may sell their New Common Shares in the future and all Persons who purchase or acquire such equity in future transactions, shall be party to, or shall be deemed to be bound by, the Shareholders Agreement.

18.    <u>Exit Facilities</u>.

(a)    On the Effective Date, substantially contemporaneously with the indefeasible repayment in full in Cash, the termination of the DIP ABL Facility, and satisfaction of the DIP Facilities Claims in accordance with section 2.5(a) of the Plan, the Exit ABL Agreement and the Exit Term Loan Agreement shall be executed and delivered by the Reorganized Debtors substantially in the form contained in the Plan Supplement, and the Reorganized Debtors shall be authorized to execute, deliver, and enter into such documents without further (i) notice to or order or other approval of this Court, (ii) act or action under applicable law, regulation, order, or rule, (iii) vote, consent, authorization, or approval of any Person, or (iv) action by the holders of Claims or Interests.  The Exit Facilities Documents shall constitute legal, valid, binding, non-avoidable, and authorized joint and several obligations of the

applicable Reorganized Debtors, enforceable in accordance with their terms, and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) under applicable law, the Plan, or this Order and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The financial accommodations to be extended pursuant to the Exit Facilities Documents are reasonable and are being extended, and shall be deemed to have been extended, in good faith, for good, valuable, and reasonably equivalent consideration, and for legitimate business purposes.

(b)      Entry of this Order shall be deemed (i) approval of the Exit Facilities, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses as and when due provided for by the Exit Facilities Documents and (ii) authorization for the Reorganized Debtors to enter into and perform under the Exit Facilities Documents (including any amendment or modification to the Exit ABL Agreement that is necessary or appropriate in order to facilitate a successful syndication of the Exit ABL Facility in accordance with the terms of those certain fee and commitment letters between the Exit Arranger and the Debtors, which the Court previously authorized the Debtors to assume), and such other documents as may be required to effectuate the Exit Facilities, and to enter into amendments to the foregoing documents in accordance with their terms, all without further notice to or order of this Court, or any act or action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Entity.

(c)       Nothing in this Order shall modify or otherwise impair either the consent rights, with respect to the Plan Documents, of the Exit Arranger or the Exit ABL Agent under the Exit ABL Agreement or the commitment letter for the Exit ABL Facility ("**Exit ABL Commitment**"), or any conditions precedent to funding set forth in the Exit ABL Agreement or the Exit ABL Commitment.

(d)       On the Effective Date, all Liens and security interests granted pursuant to, or in connection with the Exit Facilities, (i) shall be deemed to be approved and shall, without the necessity of the execution, recordation, or filing of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, be valid, binding, fully perfected, non-avoidable, and fully enforceable Liens on, and security interests in, all of the Debtors' and Reorganized Debtors' assets that secure the obligations described in the Exit Facilities Agreements, with the priorities established in respect thereof under applicable non-bankruptcy law and the New Intercreditor Agreement, and (ii) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law, the Plan, or this Order.  This Order shall be sufficient and conclusive evidence of the first priority, perfection, and validity of such Liens, pledges, and security interests without the need for any further action, including the filing or recording of any financing statements or other documents that may otherwise be required under federal, state, or local law in any jurisdiction.

(e)       The Reorganized Debtors and the Persons granted Liens and security interests under the Exit Facilities are authorized to make all filings and recordings and to obtain

all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Order (it being understood that perfection shall occur automatically by virtue of the entry of this Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.  Notwithstanding anything to the contrary in the Plan or this Order, after the Effective Date, this Court shall have no jurisdiction over any disputes arising or asserted under the Exit Facilities Documents or any Liens, rights, or remedies related thereto.

(f)        Notwithstanding the entry of this Order, from the Confirmation Date through the Effective Date (the "**Pre-Consummation Period**"), all of the DIP Loans and all other "Obligations" as defined in the DIP Credit Agreements (as defined in the DIP Orders), in each case, as incurred during the Pre-Consummation Period, and all claims, Liens, interest, rights, priorities, protections, and remedies afforded to the DIP Agents and DIP Lenders in the Final DIP Order shall remain in full force and effect and shall continue to constitute the legal, valid, binding, and enforceable obligations of Debtors, which shall not be impaired, prejudiced, or modified in any way at any time prior to the Effective Date.  Until such time as all of the conditions precedent to the effectiveness of the Exit Facilities Documents have been satisfied, including the occurrence of the Effective Date, the rights and remedies of each of the DIP Agents and DIP Lenders under the DIP Facilities shall remain in full force and effect and the effectiveness of the Exit Facilities Documents shall be deemed to not have not occurred.

(g)     For the avoidance of doubt, prior to the effectiveness of the Exit Facilities Documents, the DIP Agents and the DIP Lenders shall have the rights and remedies available to the DIP Agents and the DIP Lenders, respectively, under the Final DIP Order and the DIP Credit Agreements (as defined in the DIP Orders).

(h)     Upon the Effective Date, the DIP Agents and the DIP Lenders shall be released from any and all liability, responsibility, and obligation to hold, reserve for, or otherwise fund or ensure the funding of the Carve-Out (as defined in the Final DIP Order) or any other expenses included within the Carve-Out and from any obligation, responsibility, or liability to the Debtors, any of the Professional Persons, or any other third party to pay, fund, or otherwise satisfy the fees and expenses of such Professionals.

19.     Plan Distributions.    The Debtors are authorized to make all Plan Distributions pursuant to the terms of the Plan and to pay any other applicable fees and expenses approved by any other order of this Court.

20.     Treatment of DIP Facilities Claims.

(a)     DIP ABL Facility Claims.    The DIP ABL Facility Claims shall be Allowed in the full amount due and owing under the DIP ABL Agreement, the Final DIP Order (as defined in the Restructuring Support Agreement), and other DIP ABL Documents, including all principal, accrued and accruing postpetition interest, costs, fees, expenses, and other charges. On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed DIP ABL Facility Claims, the Allowed DIP ABL Facility Claims shall be Paid in Full.  Subject to the terms of section 2.5(a) of the Plan, upon the DIP ABL Facility Claims being Paid in Full in accordance with the preceding sentence, all Liens and security interests granted to the DIP ABL Agent pursuant to the DIP ABL Documents and

the Final DIP Order shall be deemed cancelled and shall be of no further force and effect, and each Allowed DIP ABL Facility Claim shall be deemed to be fully satisfied, settled, released, and discharged; *provided*, *however*, that if the Allowed DIP ABL Facility Claims are not Paid in Full on the Effective Date, then such Claims shall not be subject to release or discharge under the Plan or this Order.  Notwithstanding the foregoing, (i) all of the Debtors' obligations under the DIP ABL Documents and the Final DIP Order that are contingent and unliquidated (including those set forth in section 9.03 of the DIP ABL Agreement) shall survive the Effective Date in accordance with the terms of a payoff letter, in form and substance reasonably acceptable to the DIP Agent and DIP Arrangers, and shall not be discharged or released pursuant to the Plan or this Order, (ii) the DIP ABL Documents and the DIP ABL Facility shall continue in full force and effect with respect to any such contingent and unliquidated obligations thereunder, and (iii) to the extent that any provisions of the DIP ABL Documents or the Final DIP Order are of a type that survive repayment of the subject indebtedness, such provisions shall remain in effect notwithstanding that the DIP ABL Facility Claims have been Paid in Full.  Pursuant to the DIP ABL Agreement, all payments pursuant to section 2.5(a) of the Plan shall be made to the DIP ABL Agent for distribution to the DIP ABL Lenders in accordance with the DIP ABL Agreement and other DIP ABL Documents.  The DIP ABL Agent shall retain all rights as DIP Agent under the DIP ABL Documents in connection with the delivery of distributions to the DIP ABL Lenders.  The DIP ABL Agent shall not have any liability to any Person with respect to distributions made or directed to be made by such DIP ABL Agent.  All Cash distributions to be made under the Plan to the DIP ABL Agent on account of the DIP ABL Claims shall be made by wire transfer.

01:24408450.1

(b)      DIP Term Loan Facility Claims.  On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Term Loan Facility Claim, each holder of an Allowed DIP Term Loan Facility Claim shall receive, except as otherwise set forth in section 2.5(b) of the Plan, (i) an amount of Exit First Out Term Loans equal to the aggregate principal amount of such Allowed DIP Term Loan Facility Claim(s) and (ii) Cash equal to any and all fees, interest, expenses, costs, and other charges arising from such Allowed DIP Term Loan Facility Claim(s).  Upon the satisfaction in full of the Allowed DIP Term Loan Facility Claims in accordance with the terms of the Plan, all Liens and security interests granted to secure the obligations arising under the DIP Term Loan Agreement shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of this Court.  Notwithstanding the foregoing, (i) all of the Debtors' obligations under the DIP Term Loan Documents and the Final DIP Order that are contingent and unliquidated (including those set forth in section 2.17, Article 8, and section 9.03 of the DIP Term Loan Agreement) shall survive the Effective Date on an unsecured basis and shall not be discharged or released pursuant to the Plan or this Order, (ii) the DIP Term Loan Documents and the DIP Term Loan Facility shall continue in full force and effect with respect to any such contingent and unliquidated obligations thereunder, and (iii) to the extent that any provisions of the DIP Term Loan Documents or the Final DIP Order are of a type that survive repayment of the subject indebtedness, such provisions shall remain in effect notwithstanding that holders of DIP Term Loan Facility Claims have received the treatment set forth herein.  The DIP Term Loan Agent shall retain all rights as DIP Agent under the DIP Term Loan Documents in connection with the delivery of distributions to the DIP Term Loan Lenders.  The DIP Term

Loan Agent shall not have any liability to any Person with respect to distributions made or directed to be made by such DIP Term Loan Agent.

(c)      Payments of Fees and Expenses under DIP Orders.  On the later of (i) the Effective Date and (ii) the date on which such fees, expenses, or disbursements would be required to be paid under the terms of the DIP Orders, the Debtors or the Reorganized Debtors (as applicable) shall be authorized to pay in Cash all fees, expenses, and disbursements of the DIP Agents and otherwise required to be paid under or pursuant to the applicable DIP Orders. All payments of fees, expenses, or disbursements pursuant to section 2.4 of the Plan shall be subject in all respects to the terms of the applicable DIP Orders and DIP Agreements, including fees and expenses of legal counsel, financial advisors, and investment bankers, as applicable, to the DIP Agents and DIP Arrangers.

21.      ABL Discharge.  Consistent with the terms of the DIP Orders, the ABL Discharge (as defined in the DIP Orders) is deemed to have occurred as the Challenge Period expired on April 11, 2019.

22.      Cancellation of Certain Existing Security Interests.  Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors, Reorganized Debtors, or the appropriate administrative agent under the Exit Facilities Agreements, as applicable, any Collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

23.    <u>Compliance with Section 1123(a)(6) of Bankruptcy Code</u>.  The Amended Certificates of Incorporation and the terms governing the issuance of the New Common Shares comply in all respects with section 1123(a)(6) of the Bankruptcy Code and are hereby approved. The adoption and filing of the Amended Certificates of Incorporation are hereby authorized, ratified, and approved.  The Debtors have complied in all respects, to the extent necessary, with section 1123(a)(6) of the Bankruptcy Code.

24.    <u>Exemption from Securities Laws</u>.  The issuance of and the distribution under the Plan of the New Common Shares shall be exempt, without further act or actions by any Entity, from registration under the Securities Act, and all rules and regulations promulgated thereunder, and any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code.  These Securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such Securities, as that term is defined in section 1145(b) of the Bankruptcy Code.  In addition, such section 1145 exempt Securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

25.    <u>Authorization and Issuance of Plan Securities</u>.  The Debtors or Reorganized Debtors, as applicable, are authorized to issue all plan-related securities, including the New Common Shares.

26.    <u>Cancellation of Existing Securities and Agreements</u>.  Except for the purpose of evidencing a right to a distribution under the Plan or to enforce any rights of any parties under the Plan or any Plan Document and except as otherwise set forth in the Plan, or in

any Plan Document, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other documents evidencing any Class 3 Claim, Class 4 Claim, Class 5 Claim, Class 8 Interest, or Class 9 Interest and any rights of any holder in respect thereof shall be deemed cancelled, surrendered, and discharged and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged; *provided*, *however*, that any agreement that governs the rights of the holder of a Claim shall, subject to the terms of the Plan, continue in effect solely for the purposes of allowing the ABL Agent, the First Lien Term Loan Agent, the Second Lien Term Loan Agent, the DIP Agents, and DIP Arrangers to (i) enforce any obligations owed to each of them under the Plan and take any actions contemplated by the Plan and (ii) appear in the Chapter 11 Cases or any proceeding in which they are or may become a party.  The holders of or parties to such cancelled instruments, Securities, and other documentation shall have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

27.    <u>Compensation and Benefit Plans</u>.  Unless otherwise modified prior to the Effective Date, all employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, executory contracts under the Plan and, on the Effective Date, will be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.

28.    <u>Assumption of Contracts and Leases</u>.  Pursuant to Article VIII of the Plan, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure

Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed (and any consent required pursuant to section 365(c) of the Bankruptcy Code, applicable law, or otherwise shall be deemed to have been granted), unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to Final Order of this Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.  Subject to (i) satisfaction of the conditions set forth in section 8.1(a) of the Plan, (ii) resolution of any disputes in accordance with section 8.2 of the Plan with respect to the contracts or leases subject to such disputes, and (iii) the occurrence of the Effective Date, entry of this Order shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any Final Order of this Court authorizing and providing for its assumption, or applicable law.

29.    <u>Insurance Policies</u>.

(a)    All insurance policies to which any Debtor is a party as of the Effective Date, including any directors' and officers' insurance policies, shall be deemed to be and treated as executory contracts and shall be assumed by the applicable Debtor or Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.  All other insurance policies shall vest in the Reorganized Debtors.

01:24408450.1

(b)      In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date, in each case, to the extent set forth in such policies.

30.      <u>Retention of Causes of Action and Reservation of Rights</u>.    Except as otherwise provided in the Plan, including sections 10.6, 10.7, 10.8, and 10.9, nothing contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including any affirmative Causes of Action against parties with a relationship with the Debtors. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses to the same extent as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

31.      <u>Compromise and Settlement of Claims, Interests, and Controversies</u>.    In consideration for the distributions and other benefits, including releases, provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an

Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of this Order hereby constitutes approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

32.    Plan Funding.  Plan Distributions of Cash shall be funded from the Debtors' Cash on hand as of the applicable date of such Plan Distribution and from proceeds of the Exit ABL Facility.

33.    Conditions Precedent to Effective Date.  The Plan shall not become effective unless and until all conditions set forth in section 9.1 of the Plan have been satisfied or waived pursuant to section 9.2 of the Plan.

34.    Professional Compensation; Restructuring Expenses.

(a)    All Professional Persons seeking approval by this Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall (i) file, on or before the date that is thirty (30) days after the Confirmation Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by this Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Fee Claim.  The Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Court approval.

(b)    On the Effective Date, the Debtors shall establish and fund the Fee Escrow Account. The Debtors shall fund the Fee Escrow Account with Cash equal to the Professional Persons' good faith estimates of the Fee Claims. Funds held in the Fee Escrow Account shall not be considered property of the Debtors' Estates or property of the Reorganized Debtors, but shall revert to the Reorganized Debtors only after all Fee Claims allowed by this Court have been irrevocably paid in full. The Fee Escrow Account shall be held in trust for Professional Persons retained by the Debtors and for no other parties until all Fee Claims Allowed by this Court have been paid in full. Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by this Court (i) on the date upon which a Final Order relating to any such Allowed Fee Claim is entered or (ii) on such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Reorganized Debtors, as applicable. The Reorganized Debtors' obligations with respect to Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Fee Escrow Account. To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of accrued Fee Claims owing to the Professional Persons, such Professional Persons shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with section 2.1 of the Plan. No Liens, claims, or interests shall encumber the Professional Fee Escrow in any way.

(c)    Restructuring Expenses. On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, are authorized to pay in full in Cash the Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases), without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, and

without any requirement for Bankruptcy Court review or approval.  In addition, the Debtors and the Reorganized Debtors (as applicable) are authorized to continue to pay pre- and post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses related to implementation, consummation, and defense of the Plan whether incurred before, on, or after the Effective Date.

35.    Objections to Final Fee Applications.  Any objections to Fee Claims shall be served and filed (i) no later than twenty one (21) days after the filing of the final applications for compensation or reimbursement or (ii) such later date as ordered by this Court upon a motion of the Reorganized Debtors.

36.    Discharge.    Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan or in this Order, each holder (as well as any trustee or agent on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interest, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided in the Plan or this Order, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or Reorganized Debtor; *provided*, *however*, that the DIP Facilities Claims shall not be deemed to have been discharged if such Claims are not Paid in Full on the Effective Date in accordance with the terms of the Plan, and for the avoidance of doubt, nothing herein shall be deemed to discharge either the Debtors' contingent or unliquidated obligations under the DIP ABL Documents and the Final DIP Order

or the obligations of any party or Entity under the Plan arising on and after the Effective Date, including any and all obligations under the Exit Facilities Documents.

37.    <u>Released Parties</u>.  Notwithstanding the language of the Plan, the term "Released Parties" shall mean (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Sponsors, (iv) the Consenting Creditors, (v) the DIP ABL Lenders, (vi) the DIP ABL Agent, (vii) the DIP Term Loan Lenders, (viii) the DIP Term Loan Agent, (ix) the ABL Agent, (x) the ABL Lenders, (xi) the First Lien Term Loan Agent, (xii) the First Lien Lenders, (xiii) the Exit ABL Agent, (xiv) the Exit Arranger, (xv) the Exit ABL Lenders, (xvi) the Exit Term Loan Agent, (xvii) the Exit Term Loan Lenders, (xviii) the Second Lien Term Loan Agent, and (xix) with respect to each of the foregoing Persons in clauses (i) through (xviii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, and all of their respective equity holders (including shareholders), regardless of whether such interests are held directly or indirectly, current and former officers and directors (other than the Debtors' Chief Executive Officer as of January 31, 2019), principals, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, investment managers, investment advisors, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party under the Plan or this Order.

38.    <u>Releases by the Debtors</u>.  As of the Effective Date and to the fullest extent allowed by applicable law, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable

consideration, the adequacy of which is hereby confirmed, including the service of the Released

Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring

(as defined in the Restructuring Support Agreement), on and after the Effective Date, the

Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably, and

forever released and discharged by the Debtors, the Reorganized Debtors, and the Estates, in

each case on behalf of themselves and their respective successors, assigns, and representatives

and any and all other Persons that may purport to assert any Causes of Action derivatively, by or

through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments,

damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever,

arising on or after June 28, 2013, including any derivative Claims or Causes of Action, asserted

or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, whether

liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown,

foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise,

by statute, violations of federal or state securities laws or otherwise  that the Debtors, the

Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right

(whether individually or collectively) or on behalf of the holder of a Claim or Interest or other

Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors,

the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of

the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events

giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual

arrangements between any Debtor and any Released Party, the restructuring of Claims and

Interests before or during the Chapter 11 Cases, the Restructuring Transactions, the DIP

Facilities, the negotiation, formulation, preparation or consummation of the Plan (including the

Plan Supplement), the Restructuring Support Agreement and any exhibits or documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order.

      39.    <u>Releases by Holders of Claims and Interests</u>.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service and contribution of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, on and after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever released and discharged, to the maximum extent permitted by law, by the (i) holders of all Claims and Interests who voted to accept the Plan, (ii) holders of all Claims or Interests that are Unimpaired under the Plan, (iii) the holders of all Claims or Interests whose vote to accept or reject the Plan was solicited but who did not vote either to accept or to reject the Plan, (iv) the holders of all Claims or Interests who voted to reject the Plan but did not opt out of granting the releases set forth in the Plan, (v) the holders of all Claims or Interests who are deemed to reject the Plan and who did not file a timely objection to the releases provided for in section 10.7(b) of the Plan, (vi) the holders of all Claims and Interests who were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out, (vii) the Restructuring Support Parties, (viii) the First Lien Term Loan Agent, (ix) the Second Lien Term Loan Agent, (x) the DIP ABL Agent, (xi) the DIP ABL Lenders, (xii) the DIP Term Loan

Agent, (xiii) the DIP Term Loan Lenders, (xiv) the Exit ABL Agent, (xv) the Exit Arranger, (xvi) the Exit ABL Lenders, (xvii) the Exit Term Loan Agent,  and (xviii) the Exit Term Loan Lenders from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, liens, remedies, losses, contributions, indemnities, costs, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities law or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring Transactions, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the DIP Facilities, the Plan Documents and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, or any other relief obtained by the Debtors in the Chapter 11 Cases, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as

determined by a Final Order; *provided*, *however*, that the DIP Facilities Claims shall not be deemed to have been released under section 10.7(b) of the Plan if such Claims are not Paid in Full on the Effective Date in accordance with the terms of the Plan, and for the avoidance of doubt, nothing herein shall be deemed to release either the Debtors' contingent or unliquidated obligations under the DIP ABL Documents and the Final DIP Order or the obligations of any party or Entity under the Plan arising on and after the Effective Date, including any and all obligations under the Exit Facilities Documents.

40.    <u>Release and Exculpation Provisions</u>.    All release and exculpation provisions embodied in the Plan, including those contained in sections 10.7 and 10.8 of the Plan, are (i) integral parts of the Plan, (ii) fair, equitable, and reasonable, (iii) given for good and valuable consideration, (iv) necessary to the proposed reorganization, (v) reasonable in scope, and (vi) in the best interest of the Debtors and their Estates, the Reorganized Debtors, and all other parties in interest, and such provisions are approved and shall be effective and binding on all persons, to the extent provided in the Plan.    The release provisions contained in section 10.7(b) of the Plan were disclosed and explained on the Ballots, in the Disclosure Statement, and in the Plan and are consensual under applicable law.    *See In re Indianapolis Downs*, 486 B.R. at 303.

41.    <u>Plan Injunction</u>.    Except as otherwise provided in the Plan, the Plan Documents (including the Exit Facilities Agreements), or in this Order, as of the entry of this Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in any or all of the Debtors and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are permanently enjoined after the entry of this Order from (i) commencing,

conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor, (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan, and the Plan Documents, to the full extent permitted by applicable law, and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan and the Plan Documents; *provided*, *however*, that such injunction will not apply to the holders of DIP Facilities Claims if such Claims are not Paid in Full on the Effective Date in accordance with the terms of the Plan, and for the avoidance of doubt, nothing herein shall be deemed to enjoin either the enforcement of the Debtors' contingent or unliquidated obligations under the DIP ABL

Documents and the Final DIP Order or any parties to the Exit Facilities Documents from enforcing any and all obligations against any party or Entity thereto arising on and after the Effective Date.

42.     Injunction Related to Releases and Exculpation.   This Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including, without limitation, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or this Order.

43.     Indemnification Obligations.   Pursuant to section 8.4 of the Plan, subject to the occurrence of the Effective Date, any obligations of the Debtors pursuant to their corporate charters, bylaws, limited liability company agreements, or other organizational documents to indemnify current and former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees based upon any act taken or omission made as an officer, director, member, manager, agent, or employee for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; *provided*, *however*, that the Reorganized Debtors shall not indemnify officers, directors, members, or managers, as applicable, of the Debtors for any claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.  All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors.   Any claim based on the Debtors' obligations herein shall not be a

01:24408450.1

Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

44.    <u>Reservation of Rights in Favor of the United States</u>:  Notwithstanding any provision in the Plan, this Order, or other related Plan Documents, nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability or cause of action of the United States or any State, or impairs the ability of the United States or any State to pursue any claim, liability, right, defense, or cause of action against any Debtor, Reorganized Debtor, or non-debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined, and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law.  All claims, liabilities, rights, causes of action, or defenses of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or causes of action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided, however*, that nothing in the Plan or this Order shall alter any legal or equitable rights or defenses of the Debtors, the Reorganized Debtors, or any non-debtor under non-bankruptcy law with respect to any such claim, liability, or cause of action. Without limiting the foregoing, for the avoidance of doubt: (i) the United States and any State shall not be required to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or

cause of action; (ii) nothing shall affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors, or any non-debtor; (iii) nothing shall be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) nothing shall affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors, and such rights and defenses are expressly preserved; (v) nothing shall constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; and (vi) nothing shall relieve any party from compliance with all federal and environmental licenses and permits in accordance with non-bankruptcy law.

45.     <u>Payment of Statutory Fees; Filing of Quarterly Reports</u>.  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable.  From and after the Effective Date, the Debtors shall be liable for and shall pay the fees under section 1930 of title 28 of the United States Code assessed against the Debtors' estates under section 1930 of title 28 of the United States Code until entry of a final decree closing the cases.  In addition, the Debtors shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Combined Hearing in conformity with the U.S. Trustee guidelines, as modified by the agreement between the Debtors and the U.S. Trustee, until entry of an order closing or converting the cases.  The U.S. Trustee shall not be required to file a request for payment of the

01:24408450.1

quarterly fees, which shall be deemed an Administrative Expense Claim against the Debtors and their estates.

46.    <u>Exemption from Transfer Taxes</u>.    To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, transfer, or exchange of any securities, instruments, or documents, (ii) the creation of any Lien, mortgage, deed of trust, or other security interest (including pursuant to the terms of the Exit Facilities Agreements), (iii) all sale transactions consummated by the Debtors and approved by this Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under the Plan, (iv) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (v) the grant of Collateral under the Exit Facilities Agreements, and (vi) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including this Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to this Order, be ordered and authorized to accept such instrument without requiring the payment of any such tax, recordation fee, or governmental assessment.

47.    <u>Intercompany Claims</u>.    On or after the Effective Date, all Intercompany Claims shall be paid, adjusted, continued, settled, reinstated, discharged, or eliminated, in each

case to the extent determined to be appropriate by the Debtors or Reorganized Debtors, as applicable, in their sole discretion.

48.    <u>Documents, Mortgages, and Instruments</u>.    Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions, including the Restructuring Transactions, contemplated by the Plan and this Order.

49.    <u>Reversal/Stay/Modification/Vacatur of Order</u>.    Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors, the Reorganized Debtors, or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

50.    <u>Retention of Jurisdiction</u>.    Notwithstanding the entry of this Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan, the Plan Documents, or this Order, shall retain exclusive jurisdiction over all matters arising out of or related to, the Chapter 11 Cases to the

fullest extent legally permissible, including jurisdiction over the matters set forth in Article XI of the Plan.

51.    <u>Modifications</u>.

(a)    The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by this Court in accordance with the Restructuring Support Agreement; *provided*, *however*, that the Plan and exhibits, supplements, or appendices hereto may not be modified in any way that adversely affects the distributions, recoveries, treatment, classification, or other rights or entitlements of the DIP Lenders and the DIP Agents without the consent of the DIP Agents and DIP Arrangers.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors, in consultation with the Requisite Creditors and the Exit Arranger, may remedy any defect or omission or reconcile any inconsistencies in the Plan or this Order with respect to such matters as may be necessary to carry out the purposes of effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

(b)    Subject to the Restructuring Support Agreement, prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of this Court*; provided*, *however*, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Plan.

52.     <u>Second Lien Term Loan Agent Definition</u>.  Notwithstanding the language of the Plan, the term "Second Lien Term Loan Agent" shall mean Wilmington Trust, National Association, as successor to Morgan Stanley Senior Funding, Inc., solely in its capacity as administrative agent and collateral agent under the Second Lien Term Loan Agreement, or its successors, assigns, or any replacement agent appointed pursuant to the terms of the Second Lien Term Loan Agreement.

53.     <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

54.     <u>Headings</u>.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Order for any other purpose.

55.     <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).

56.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

57.     <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other

governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements (including the Plan Documents), and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

58.     Notice of Entry of Order and Effective Date.    In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order and occurrence of the Effective Date, substantially in the form annexed hereto as **Exhibit B**, on all parties who hold a Claim or Interest in these cases, the U.S. Trustee, and any other parties in interest.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order and the occurrence of the Effective Date.

59.     Final Order.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

60.     Substantial Consummation.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

61.     Waiver of Stay.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived.  This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

62.     Inconsistency.  To the extent of any inconsistency between this Order and the Plan, this Order shall govern.

63.     No Waiver.  The failure to specifically include any particular provision of the Plan in this Order will not diminish the effectiveness of such provision nor constitute a

waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

01:24408450.1

**Dated: April 18th, 2019**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**